O'Leary was convicted on a charge of possession of marijuana in the Circuit Court of Baldwin County on July 31, 1978, and sentenced to 15 years in the state penitentiary. The Court of Criminal Appeals of Alabama reversed and remanded for a new trial by holding that O'Leary was never arraigned on the charge for which he was indicted and convicted. O'Leary v. State,417 So.2d 214 (Ala.Cr.App. 1980). This court granted the State's petition for writ of certiorari and reversed the judgment of the Court of Criminal Appeals. This court held that there was sufficient evidence to support the trial court's finding that O'Leary was arraigned. On remand, the Court of Criminal Appeals proceeded to review all issues presented on appeal other than the arraignment issue, O'Leary v. State, 417 So.2d 219
(Ala.Cr.App. 1981), and decided those issues adversely to O'Leary and affirmed his conviction. Again, this court granted a petition for writ of certiorari to the Court of Criminal Appeals, O'Leary v. State, 417 So.2d 232 (Ala. 1982), and affirmed.
This case is here on certiorari following later proceedings. The principal issue in this review that was discussed by this court in the last review is O'Leary's contention that the Court of Criminal Appeals erred when it did not reverse the trial court's ruling denying his motion for new trial based on false answers given by the jury *Page 1373 
foreman during the voir dire examination of prospective jurors. This was Justice Embry's answer upon our earlier consideration of the issue:
"This issue was not addressed in the opinion of the Court of Criminal Appeals, although petitioner had argued it in his brief to that court. The issue was properly brought before this court, however, by petitioner's additional or corrected statement of facts pursuant to ARAP 39 (k). Bankston v. State,358 So.2d 1040 (Ala. 1978).
"During the voir dire examination, defendant's attorney asked each juror about his or her jury duty experience, to which Mr. Morgan Odom, eventually selected as foreman of the jury, responded:
"`I was summoned twice, but never served.'
"Several months after defendant's conviction, a question arose as to whether defendant had been properly arraigned for trial. In connection with the arraignment issue, defendant filed a motion to correct or modify the record. At a hearing on that motion, several witnesses, including Odom, were called to testify concerning the events which transpired on the morning of the arraignment.
"After specifically testifying that he had served on the jury for the defendant's trial in July of 1978, Odom was cross-examined by defendant's attorney, during which the following exchanges occurred.
"`Q Mr. Odom, how many times have you been on a jury?
"`A About four times to the best of my knowledge.
"`Q How many times have you been on a criminal jury like the one in July last year?
"`A I was on the July one last year, and I was on the marijuana one of the year before that.
"`Q And that would have been in 1977?
"`A Yes, sir.
"`. . .
"`Q Do you recall anything else happening that morning?
"`A Mostly routine. It was kind of a funny way of striking a jury. I just never seen one struck like that.
"`All the questions that were asked. This and that, trying to prolong the court, looked to me like that.
"`. . .
"`Q Do you remember anything about me saying something about wanting a continuance and one of my partners was in Washington at the United States Supreme court asking for a continuance?
"`A You asked for a continuance or you heard from one and you didn't get it, so they all prolonged waiting on your call or something.
"`All these questions that lasted half a day, to me it seemed like it was just prolonging the trial and stalling for time. That's my personal opinion.
"`. . . .
"`Q Were you the foreman of the jury?
"`A Yes, sir.
"`Q How many times have you been foreman of a jury?
"`That's the second time I have been foreman.'
"Although defendant's attorney did not ascertain, by his questions, whether the four occasions of Odom's jury service occurred prior to or after the trial of defendant in this case, it is evident from the quoted responses of Odom that he had served on a jury at least once prior to defendant's conviction and, significantly, in a `marijuana case.' It is further made clear that defendant's trial was the second occasion on which Odom had served as jury foreman.
"Parties have a right to have questions answered truthfully by prospective jurors to enable them to exercise their discretion wisely in exercising their peremptory strikes.Coalite, Inc. v. Weeks, 284 Ala. 219, 224 So.2d 251 (1969);Little v. State, 339 So.2d 1071 (Ala.Cr.App. 1976), cert.denied, 339 So.2d 1073 (Ala. 1976). *Page 1374 
"However, `the failure of a juror to make a proper response to a question regarding his qualifications to serve as a juror, regardless of the situation or circumstances, does not automatically entitle one to a new trial.' Beauregard v. State,372 So.2d 37 (Ala.Cr.App. 1979); Radney v. State, 342 So.2d 942
(Ala.Cr.App. 1976), cert. denied, 342 So.2d 947 (Ala. 1976).
"Some cases have held that `[t]he proper inquiry in such cases is whether the defendant's rights were prejudiced by such failure to respond properly.' Radney, supra; Sheperd v. State,57 Ala. App. 35, 325 So.2d 551 (1975). To be more correct, however, `[t]he test is not whether the defendant was prejudiced but whether he might have been.' Beauregard v.State, supra.
"It is axiomatic, however, that a party seeking reversal on appeal must not only argue a valid ground of reversible error committed below, but must also have preserved that error for review by proper procedural mechanisms.
"At the trial level, defendant raised the discrepancy in Odom's answers by way of an oral renewal, based on newly discovered evidence, of his earlier written motion for new trial. The oral renewal was made more than 30 days after judgment was entered on defendant's conviction, even though the original motion for new trial was filed within 30 days of conviction.
"The 30-day statutory period for filing a motion for new trial is jurisdictional. Code 1975, § 15-17-5, Nikens v. State,31 Ala. App. 297, 15 So.2d 633 (1943).
"Where a motion for new trial filed within 30 days of a judgment of conviction does not contain a ground relative to newly discovered evidence, a defendant is not in a position to make an assertion regarding newly discovered evidence by motion for new trial after expiration of the 30-day period, even though the new evidence could not have been discovered until after that time period had elapsed. The trial court therefore acted correctly in denying defendant's motion for new trial as orally renewed. It is apparent this is the reason the appellate court did not address this issue. The oral motion to renew was both ineffective and, more importantly, too late."
Following our decision in O'Leary v. State, 417 So.2d 232
(Ala. 1982), O'Leary filed a petition for writ of error coram nobis and raised the question of false answers given by the jury foreman during the voir dire examination. The trial court, after a hearing, denied the petition. Its order was affirmed by the Court of Criminal Appeals, 428 So.2d 1379, without opinion, and that appellate court later overruled the application for rehearing. O'Leary sought review by filing his petition for writ of certiorari to the Court of Criminal Appeals. We have granted the writ.
The voir dire examination question was discussed by Justice Maddox in Burroughs Corp. v. Hall Affiliates, Inc.,423 So.2d 1348 (Ala. 1982). He wrote:
 "One of the central issues in this case concerns the failure of five jurors to respond to questions submitted by appellant's counsel and asked by the trial judge during the voir dire examination of the jury venire. Counsel for Burroughs contends that because the prospective jurors failed to answer the questions, appellant was unable to utilize its jury strikes effectively and was, therefore, prejudiced and is entitled to a new trial. Burroughs relies on the case of Ex parte Ledbetter, 404 So.2d 731
(Ala. 1981), wherein this Court reversed both the Court of Criminal Appeals and the trial court and held that the trial court erred in not granting a new trial. In that decision, this Court stated that on the issue of whether the petitioner was prejudiced by a juror's failure to respond to a question during voir dire, the `test is whether the petitioner might have been, not whether he actually was prejudiced.' Id. at 733.
 "The earlier case of Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970), did not address the effect of an improper answer or failure to answer questions on voir dire which had they been answered properly would have disclosed a challenge for cause. 286 Ala. at 167, 238 So.2d 330. *Page 1375 
Rather, Freeman established the standard to which this Court must adhere in reviewing the trial court in those circumstances. Quoting from Freeman:
 "`We hold that the proper inquiry for the trial court on motion for new trial, grounded on allegedly improper responses or lack of responses by prospective jurors on voir dire, is whether this has resulted in probable prejudice to the movant. This appears to be the general rule throughout the country. . . .'"
This court, by adhering to the standard established inFreeman v. Hall, 286 Ala. 161, 238 So.2d 330 (Ala. 1970), held that the trial judge did not abuse his discretion by denying a motion for new trial based on answers given by the prospective jurors during the voir dire examination.
In this case we follow the Freeman standard and opine that the false answers given by Odom resulted in probable prejudice to O'Leary. His answer to questions during the voir dire examination, along with his answers regarding jury service given at the motion to correct and modify the record in connection with the arraignment issue, are noted above in this opinion. Additionally, one of the grounds in the coram nobis petition was that Odom testified in a previous hearing that he observed O'Leary's arraignment from the back of the courtroom. Subsequently, he became foreman of the jury that convicted O'Leary.
We hold that O'Leary is entitled to the writ of error coram nobis. The judgment of the Court of Criminal Appeals is reversed; and the case is remanded to that court for it to issue its order directing the trial court to grant the coram nobis writ.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.