LEIGH M. CLARK, Retired Circuit Judge.
This is an appeal from a judgment of conviction and sentence on a jury trial on an indictment that charged in pertinent part that “on, to-wit: December 31, 1977, Richard Clark did unlawfully possess marihuana, one of the controlled substances set out in the Alabama Uniform Controlled Substances Act.” The court sentenced him to imprisonment for fifteen years.
The “STATEMENT OF THE CASE” contained in brief of counsel for appellant is accepted in the brief of counsel for appellee as “substantially correct.” We now quote the first two paragraphs of said STATEMENT OF THE CASE:
“The Appellant, Richard E. Clark, was arrested on the morning of December 31, 1977, in or near the engine room of the 44’ motor trawler, the ‘Island Girl’, while that vessel was at rest in State waters near Bear Point Marina located near Gulf Shores, Alabama. After the arrest of Mr. Clark and one other occupant of the motor vessel, a sailing vessel, located one mile distant was boarded by a party led by Baldwin County deputies and an admitted exploratory warrantless search was conducted. The sailboat was berthed against a bank, had no occupants on board and was also located in State waters.
“Mr. Clark was indicted by the grand jury of Baldwin County on a charge of possession of marihuana based on contraband discovered during a warrantless search of the sailboat. No contraband of any type was ever located aboard the motor vessel on which he was arrested.”
*1083 We note from the court reporter’s transcript of the evidence, as well as from the briefs of counsel for the respective parties, that the date of the incident involved, the places of travel of the two boats or ships involved, the motor trawler named the “Island Girl” and the sailing vessel, as well as some but not all of the people thereon were substantially the same as those found in the case of O’Leary v. State, 417 So.2d 219 (Ala.Cr.App.1981) and Ex parte, O’Leary, 417 So.2d 232 (Ala.1982), in which the judgment of conviction and sentence of the trial court was affirmed. We think we need not repeat the lengthy facts recited in the opinions of the Alabama Court of Criminal Appeals and the Alabama Supreme Court in the cited O’Leary case but limit our recital of the evidence on the trial of the instant case to the additional or different facts shown by the record in the case now under consideration that may be pertinent to any of the issues presented on appeal.
I.
The first issue presented in brief of counsel for appellant is divided into two parts. In the first part, it is stated that the warrantless search and seizure of the sailboat was predicated on “mere suspicion” and was without probable cause. As to this part of the contention made in appellant’s brief as to the first issue, we repeat substantially what was said in the opinion by this Court in O’Leary v. State, supra, at 417 So.2d 222, 223:
“The Cher [the sailboat involved] had been preceded at varying distances by a pleasure yacht by the name of ‘Island Girl’ from the Ft. Morgan area to the area of the Bear Point Marina. It then went only a short distance farther in a generally easterly direction and stopped without coming to land. Soon thereafter, both of the vessels were boarded by some of the law enforcement officers. Those boarding the Cher found the marihuana; those boarding the Island Girl found no marihuana or other controlled substance. On the Island Girl were the defendant (appellant) and another man. They were both arrested on the occasion. On the same occasion persons who had landed from the Cher were arrested; soon after the marihuana was discovered, and all arrested, including defendant (appellant), were transported to the Baldwin County Jail.”
For similar reasons to those set forth in O’Leary v. State, supra, we hold that the trial court did not err “in failing to grant the Motion to Suppress, Motion to Exclude, and Motion for Judgment of Acquittal” as contended by counsel for appellant. In both cases the defendants-appellants were seen only on the Island Girl; they were not on the Cher, on which more than four thousand pounds of baled marihuana was found and seized.
In the second part of the first issue presented by appellant, the contention is made that “the provisions of 19 U.S:C. 1581 are unconstitutional for failure to impose geographical limits or restraints on the expansive language of that statute.” The first and fifth paragraphs of the cited statute, as shown by United States Code Annotated Tit. 19, § 1581, are as follows:
“(a) Any officer of the customs may at the time go on board of any vessel or vehicle at any place in the United States or within the customs waters or, as he may be authorized, within a customs-én-forcement area established under the Anti-Smuggling Act, or at any other authorized place, without as well as within his district, and examine the manifest and other documents and papers and examine, inspect, and search the vessel or vehicle and every part thereof and any person, trunk, package, or cargo on board, and to this end may hail and stop such vessel or vehicle, and use all necessary force to compel compliance.
“(e) If upon the examination of any vessel or vehicle it shall appear that a breach of the laws of the United States is being or has been committed so as to render such vessel or vehicle, or the merchandise, or any part thereof, on board of, or brought into the United States by, such vessel or vehicle, liable to forfeiture or to secure any fine or penalty, the same shall be seized and any person who *1084 has engaged in such breach shall be arrested.”
In support of the second part of Issue I, counsel for appellant relies upon Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) in which in a five to four opinion of the Supreme Court it was held that in the absence of probable cause or consent, the warrantless search of defendant’s automobile violated his Fourth Amendment rights, and that the search could not be justified either as a functional equivalent of a border search or under the Supreme Court's earlier decisions authorizing warrantless searches of automobiles and warrantless administrative inspections. We believe that the instant case is distinguishable from Almeida-Sanchez v. United States, in that the Supreme Court held in said case that there was an absence of probable cause for believing that defendant had committed a violation of the law. The search was made in order to determine whether there was an illegal alien in the automobile. There was no illegal alien in the automobile, but marihuana was found therein. In other cases cited by counsel for appellant, United States v. Jones, 528 F.2d 303, 304 (9th Cir.1975), United States v. Brennan, 538,F.2d 711, 715 (5th Cir.1976), United States v. Tilton, 534 F.2d 1363 (9th Cir.1976) and United States v. Vigil, 448 F.2d 1250 (9th Cir.1971) holding that a “high degree of probability that a border crossing took place or that Customs officers must be ‘reasonably certain’ that the object of the search has just entered from a foreign country” do not constitute authorities to the effect that the search of the Cher by Customs officers and other law enforcement authorities was illegal. The evidence shows in the instant case and in the opinion in the 0 ’Leary case that a Customs officer observed the Cher as it entered into the territorial waters of the United States at a point where a mere examination of the map of south Alabama discloses' is the most direct route for a sailboat from the Gulf of Mexico; at this place of entry the Cher was observed by Customs officer and thereafter the Cher and the Island Girl were kept under surveillance by law enforcement authorities by radar whereby the law enforcement authorities were enabled to determine that personnel on the Cher and personnel on the Island Girl were working together in an effort to smuggle into Baldwin County prohibited substances such as marihuana, as to which there is common knowledge, as shown by the press and other media, often takes place in the area involved and against which faithful law enforcement authorities in such area are constantly on guard. We determine both parts of Issue I as presented in brief of counsel for appellant adversely to appellant.
II.
The caption of this issue as shown by brief of counsel for appellant is “GRAND JURY CHALLENGE.” Counsel for appellant argues in his brief, “Moreover, the jury law in effect at the time that the Grand Jury was empanelled contained twenty-two categories of individuals who were excluded from jury service by occupation, thus depriving the appellant with a fair cross-representation of individuals eligible for jury service. See Code of Alabama, 1975, Section 12-16-2(l)-(22) excluding numerous categories of individuals by occupation. This contention of counsel for appellant is substantially the same as the contention of appellant in Oyarzun v. Pittman, 367 So.2d 574 (Ala.Cr.App.1978) cert. denied, Ala., 367 So.2d 584 (Ala.1979), in which in opinion by Judge DeCarlo at 367 So.2d 579, we find:
“In Fikes v. State, 263 Ala. 89, 81 So.2d 303, the Alabama Supreme Court stated:
“ ‘There is no legal reason for quashing an indictment or a venire simply because the jury commission did not put the name of every qualified person on the roll or in the jury box, in the absence of fraud (or a denial of constitutional rights).... ’
“The failure to place the name of every qualified person on the jury roll is not sufficient for quashing an indictment or venire without a showing of fraud or the denial of constitutional right. Substantial compliance with the first paragraph of § 12-16-41, Code of Alabama 1975, is *1085 all that is required absent fraud or a denial of constitutional rights. State ex rel, Gregg v. Maples, [286 Ala. 274, 239 So.2d 198 (1970)] supra.”
The case of Oyarzun v. Pittman was an appeal from a judgment in the same court as the judgment in the instant case. We hold in accordance with the cited case that the issue now under consideration should be decided adversely to appellant. -
III.
By the third issue presented in brief of counsel for appellant, the contention is made that the trial court erred in instructing the trial jury with respect to the law of this State concerning conspiracy. Quotations from the oral charge to the jury of the trial court disclose that the trial court used the verb “conspire” and the noun “conspiracy.” Pertinent excerpts from the court’s oral charge to the jury are as follows:
“Now, all persons, however involved, constituting the offense or aids or abets in the commission of the offense are equally guilty. Whether by prearrangement or on the spur of the moment, two or more people enter into a common enterprise or venture and a criminal offense is contemplated that each is a co-conspirator and if the purpose is carried out, each is guilty of the offense committed whether he did any overt act or not.”
Other portions of the court’s oral charge are quoted in the brief of counsel for appellant:
“(I)f ... and two or more people have entered into an enterprise or conspiracy to commit a crime, the possession of one is also equal to one as the other as constructive possession might be defined to you.
“Such community of purpose of conspiracy, all of this does not need to be proved by direct testimony. You are to determine if it existed at all and if so, to the extent that it did exist, whether there was a conspiracy, whether there was a joint enterprise to violate the laws of the State of Alabama pertaining to the Controlled Substances Act — and in this particular case, marihuana — from the conduct of the parties and all of the testimony. You determine whether the conduct of the parties from the evidence that came to you from the stand and the testimony in this case. You are to make a determination but you must be convinced beyond a reasonable doubt and to a moral certainty that there was a joint venture or a joint enterprise or a joint conspiracy to violate the laws of the State.
“You are to decide whether or not the Defendant in this particular case or one of the other co-conspirators had possession of a controlled substance which violated the laws of the State of Alabama.
“(I)f, on the other hand, after considering all of the evidence in connection with the case, if you are not satisfied beyond a reasonable doubt and to a moral certainty that the Defendant is guilty, that there was a conspiracy or general scheme, that the State has proven all of the material allegations contained in the indictment and that Defendant knew that marihuana was being brought in, that he aided and abetted and assisted in it, in that event, the form of your verdict will be, ‘We, the jury, find the Defendant guilty.’ ”
Although the trial judge could well have left out the word “conspiracy” from his oral charge to the jury, we have no doubt that the jury understood from the oral charge of the trial court that the defendant was being charged with and tried for the constructive possession of marihuana and that the jury was not misled to the prejudice of defendant by what the trial court said in its oral charge to the jury.
IV.
This issue is captioned in appellant’s brief, “JURORS’ QUESTIONS — MOTION FOR MISTRIAL — FAILURE TO GIVE CURATIVE INSTRUCTIONS,” and is directed at that which took place about an hour after the case had been submitted to the jury and the jurors had commenced their deliberations, as shown by the follow *1086 ing excerpt from the court reporter’s transcript: .
“(Whereupon, the following In-Chambers conference was had with all parties present:)
“THE COURT: Now, the jury has a question. The question is, what nationality is Mr. Clark. Does he speak English. Is he a citizen of the United States. Mechanics license. Proof of that. Time of work. Why didn’t he testify in his own behalf. Why did he come back from Tallahassee to fix the boat, a pleasure boat.
“Now, what do you think? I can’t answer these.
“MR. FRENCH [Defendant’s attorney]: Right.
“MR. PENNINGTON [Defendant’s attorney]: Okay.
“THE COURT: Let’s just go back into the Courtroom.
“(Whereupon, the In-Chambers conference was concluded.)
“(JURY IN)
“THE COURT: Ladies and gentlemen of the jury: The Court has received your questions. I must inform you at this time that I have to tell you that all the evidence, the only evidence you can consider is only the evidence that came from this witness stand. Nothing can be added or subtracted from that evidence that came to you from the witness stand and consider the entire case on the basis of that evidence and that evidence alone. You may retire once again.
“(JURY OUT AT 5:05 p.m.)
“MR. FRENCH: Do you have that in the record?
“MR. BUSSMAN [Defendant’s attorney]: We’d move for a mistrial at this time based on the questions that have been requested to be answered by the jury. In my opinion, clearly those questions show that in the evidence a bias, there is a bias and prejudice of based solely on his appearance.
“THE COURT: Deny the motion.
“(Whereupon, the jury returned at 5:30 p.m.)
“THE COURT: Ladies and gentlemen of the jury, have you reached a verdict in this case?
“A JUROR: Yes, we have.
“THE COURT: Is this your verdict, ‘We, the jury, find the Defendant, Richard Clark, guilty of constructive possession of marihuana. We also recommend a fine be determined by Judge Wilters. Dorothy White, foreman.
“(Jury polled.)
“THE COURT: Is there any objection as to the time of this verdict?
“MR. FRENCH: Yes, sir, that’s an improper verdict.
“THE COURT: All right. Ladies and gentlemen, your verdict, the form of your verdict is, if you are satisfied beyond a reasonable doubt and to a moral certainty that he is guilty as charged by the evidence in the indictment, the form of your verdict would be, We, the jury, find the Defendant guilty and in your sound discretion, you would assess the fine from zero up to $25,000.
“Now, ladies and gentlemen, I am going to ask you to go back and reconsider and put the proper verdict on the indictment accordingly.
“MR. FRENCH: Judge, would you instruct them as to not guilty?
“THE COURT: Yes, let me get to it. Now, if you are not satisfied beyond a reasonable doubt and to a moral certainty that he is guilty as charged, your form of the verdict would be, We, the jury, find the Defendant not guilty.
“MR. FRENCH: And one more thing, he is not charged with the constructive possession.
“THE COURT: It’s just either way, we, the jury, find the Defendant not guilty and you will assess the fine if you so desire.
“A JUROR: You don’t assess the fine?
“THE COURT: No, ma’am. That’s your prerogative. If you see fit to assess a fine you may.
“(JURY OUT AT 5:35 p.m.)
“(JURY IN AT 6:00 p.m.)
“THE COURT: Ladies and gentlemen of the jury, have you reached a verdict?
*1087 'A JUROR: We have.
“THE COURT: Is this your verdict, ‘We, the jury, find the Defendant, Richard Clark, guilty as charged and we recommend a fine of $15,000. Dorothy White, foreman.’
“(JURY POLLED.)”
It appears from the court reporter’s transcript as to what occurred after the case was submitted to the jury as quoted above, that the motion on behalf of defendant for a mistrial was directed at the question of the jury that was being considered in an “In-Chambers conference” but was not made until after the trial judge had instructed the jury as to the questions, and for that reason was untimely. We are of the opinion that the trial court did not commit prejudicial error in the overruling of the motion for a mistrial. We go further by stating that ever since the Code of Alabama of 1907, the law of Alabama has been as stated in Code of Alabama 1975, § 12-16-233 as follows:
“The court or presiding judge in all cases of jury trial may discharge the jury without giving a verdict, with the consent of all parties to the trial or without the consent of the parties, when, in the opinion of the court or judge, there is a manifest necessity for the discharge or when the end of justice would otherwise be defeated. In all eases in which the jury is discharged without a verdict, a mistrial shall be entered upon the minutes of the court, assigning the reason or cause for the mistrial, and no person shall gain any advantage by reason of such discharge of the jury.”
We now hold as held in Chillous v. State, 405 So.2d 58, 61 (Ala.Cr.App.1981):
“The granting of a mistrial is addressed to the broad discretion of the trial judge and his ruling will not be revised on appeal unless it clearly appears that such discretion has been abused. Woods v. State, 367 So.2d 982 (Ala.1978). Where error is eradicable a mistrial is too drastic and is properly denied. Van Antwerp v. State, Ala.Cr.App., 358 So.2d 782, cert. denied, 358 So.2d 791 (Ala.1978).”
V.
By this issue, with a caption of “MOTION FOR NEW TRIAL,” counsel for appellant contends that the trial court should have granted defendant’s motion for a new trial based on one of the grounds of the motion to the effect that there had been improprieties on the part of some of the jurors as claimed in an affidavit by one of the jurors and her testimony on the motion for a new trial, as set forth in the brief of counsel for appellant as follows:
“(a) The jury panel never at any time voted on the issue of the guilt or innocence of Mr. Clark;
“(b) Several members of the panel acknowledged that there was no evidence against Mr. Clark and admitted that the State had failed to prove its’ case;
“(c) Members of the jury panel expressed prejudice against Mr. Clark because of the nature of the charge and based on their comments they were trying ‘marihuana’ and not Mr. Clark;
“(d) Members of the jury panel exercised improper conduct during the course of deliberations;
“(e) Members of the jury panel disregarded the Court’s instruction concerning the burden of proof and presumption of innocence;
“(f) The Foreman of the Defendant’s trial jury [naming her], stated that she would ‘rather sacrifice this one man than thousands of our children.’
“(g) Members of the jury considered the failure of Defendant to testify in his own behalf as evidence against the Defendant;
“(h) One of the jurors [naming him] failed to disclose during voir dire his previous jury service in a trial of a young girl accused of ‘selling dope’ who resembled his daughter;
“(i) That the jurors failed to understand the charge of Judge Wilters and believed unanimous agreement of not guilty was required;
“(j) The verdict submitted by the foreman of the jury was not the verdict of *1088 Juror [naming her], nor her sister-in-law, [naming her];
“(k) The Juror [naming her] was pressured into remaining silent as to her true conviction that Mr. Clark was innocent;
“(l) The jurors were not informed and they did not realize that they had the option to disagree with the jury foreman and hold fast to their opinion that Mr. Clark was not guilty of the charges in this case.”
Counsel for appellant states in his brief that the irregularities from (a) to (l) stated above “were readily apparent from the affidavit and testimony” of Ms. Saundra K. Resmondo, one of the jurors in the case. Her testimony is shown in the court reporter’s transcript of the hearing by the trial judge of defendant’s motion for a new trial. The transcript shows also that almost at the conclusion of the hearing on the motion for a new trial, the following occurred:
“THE COURT: Now, when I asked you if he was guilty, did you nod in the affirmative to me?
“THE WITNESS: I don’t remember.
“THE COURT: Well, I asked you directly, I looked at you and I asked you, didn’t I?
“THE WITNESS: Well, yes, you sort of scanned over us.
“THE COURT: Well, did I look at you directly and ask you that question?
“THE WITNESS: Yes.
“THE COURT: And did you not nod affirmatively to my question?
“THE WITNESS: I guess I didn’t think I had a choice in the matter.
“THE COURT: Do you have anything else?
“MR. GIBSON: Nothing else further to offer. The affidavit is certainly lengthy and I see no reason to get her to repeat it word for word. I figure that you will just look it over.”
We withhold our determination of Issue V until consideration of Issue VI as the contention is made in brief of counsel for appellant as to each issue that the trial court was in error in overruling defendant’s motion for a new trial.
VI.
The caption of Issue VI as found in brief of counsel for appellant is as follows:
“FAILURE OF PROSPECTIVE JUROR TO DISCLOSE MULTIPLE PRIOR JURY SERVICE INCLUDING SERVICE ON PRIOR MARIHUANA CASE INVOLVING A DEFENDANT WHO RESEMBLED HIS DAUGHTER.”
In the argument found in brief of counsel for appellant as to this issue, counsel for appellant continues to urge as he did as to Issue V that his motion for a new trial should have been granted. We continue to hold that the trial court was not in error in overruling defendant’s motion for a new trial. We note, however, before concluding our discussion of Issue VI, that counsel for appellant has cited in support of this issue the opinion of the Alabama Supreme Court in the relatively recent [July 8, 1983] case of Ex parte Daniel P. O’Leary, (Daniel P. O’Leary v. State), at 438 So.2d 1372. In the last cited O’Leary case, it was before the appellate courts on an appeal from a judgment of the trial court denying O’Leary’s petition for writ of error coram nobis. As the next and final issue in the case sub judice is captioned:
“PETITION FOR WRIT OF ERROR CORAM NOBIS”
and is based on the contention that the trial court erred in denying said petition, we will give further consideration to Issue VI in our discussion of the next and final issue presented in brief of appellant.
VII.
The caption and the first paragraph of argument as to Issue VII are thus stated in brief of counsel for appellant:
“PETITION FOR WRIT OF ERROR CORAM NOBIS.
“The trial court erred in denying the Petition for Writ of Error Coram Nobis based on the perjured testimony of former Deputy Teddy Flemming, the principal chain of custody witness for the State.”
Counsel for appellant in discussing this issue as well as Issue VI rely upon Ex *1089 parte O’Leary at 438 So.2d 1372, which we have stated above consisted of an appeal from a judgment of the trial court denying O’Leary’s petition for writ of error coram nobis, wherein the Alabama Supreme Court remanded the case to the Court of Criminal Appeals for it to direct the trial court to grant the coram nobis writ, as shown by orders of the Alabama Supreme Court and the Alabama Court of Criminal Appeals at 438 So.2d 1375. It is to be observed that said O’Leary was the same O’Leary who was tried and convicted the second time of the possession of marijuana while on the Island Girl at the same time and place that this appellant was on the Island Girl on the night of December 31, 1977, and which the Court of Criminal Appeals and the Alabama Supreme Court on certiorari affirmed. We now quote from the opinion of the Alabama Supreme Court, in the last cited O’Leary case at 438 So.2d 1374, 1375, on certiorari to the Alabama Court of Criminal Appeals, the following:
“Following our decision in O’Leary v. State, 417 So.2d 232 (Ala.1982), O’Leary filed a petition for writ of error coram nobis and raised the question of false answers given by the jury foreman during the voir dire examination. The trial court, after a hearing, denied the petition. Its order was affirmed by the Court of Criminal Appeals, 428 So.2d 1379, without opinion, and that appellate court later overruled the application for rehearing. O’Leary sought review by filing his petition for writ of certiorari to the Court of Criminal Appeals. We have granted the writ.
“This court, by adhering to the standards established in Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (Ala.1970), held that the trial judge did not abuse his discretion by denying the motion for new trial based on answers given by the prospective jurors during the voir dire examination.
“In this case we follow the Freeman standard and opine that the false answers given by Odom resulted in probable prejudice to O’Leary. His answer to questions during the voir dire examination, along with his answers regarding jury service given at the motion to correct and modify the record in connection with the arraignment issue, are noted above in this opinion. Additionally, one of the grounds in the coram nobis petition was that Odom testified at a previous hearing that he observed O’Leary’s arraignment from the back of the courtroom. Subsequently, he became foreman of the jury that convicted O’Leary. “We hold that O’Leary is entitled to the writ of error coram nobis. The judgment of the Court of Criminal Appeals is reversed; and the case is remanded to that court for it to issue its order directing the trial court to grant the eoram nobis writ.”
The order of the Alabama Supreme Court was complied with promptly by the Alabama Court of Criminal Appeals as shown at 438 So.2d 1375.
By the opinion of the Alabama Supreme Court in the last cited O’Leary case we are enlightened as to our duty as to the action we should take as to the judgment of the trial court. We are convinced that, although the trial court was not in error in overruling defendant’s motion for a new trial or any of its rulings during the trial of this appellant, it was in error in denying defendant’s petition for writ of error coram nobis and that its judgment in so denying said petition should be reversed and the cause remanded to the trial court for another trial. We arrive at this conclusion without passing upon some of the issues that have been raised by appellant as to alleged perjury on the part of some of the witnesses for the State in this case and/or in cases against other defendants pertaining to charges of possession of marijuana on the night of December 31, 1977, on the same occasion as that shown by the evidence recited in O’Leary v. State, 417 So.2d 219 (Ala.Cr.App.1981) and Ex parte O’Leary, 417 So.2d 232 (Ala.1981).
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article *1090 (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED. '
All the Judges concur.