WELCH, Judge,
dissenting.
I respectfully dissent from the majority’s unpublished memorandum affirming the circuit court’s denial of Roger Dixon’s motion for a new trial. One of Dixon’s grounds for seeking a new trial was that a juror, L.A., deceived the trial court and the parties by remaining mute when the State asked the following question of the venire:
“Have any of you or a member of your immediate family ever been a criminal defendant in a criminal case in either the district court or circuit court in this county where Mr. Kirkland, Mr. Billy or any of the assistant district attorneys prosecuted the case?”
(R. 36.)
The method by which claims of juror misconduct occurring during voir dire are analyzed is set forth in Tomlin v. State, 695 So.2d 157 (Ala.Crim.App.1996).
“ We start with the basic constitutional premise that every person is entitled to an impartial jury [pursuant to the Sixth Amendment to the United States Constitution].’ Knight v. State, 675 So.2d 487, 493-94 (Ala.Cr.App.1995), cert. denied, 675 So.2d 502 (Ala.1996). ‘It is fundamental to our system of impartial justice that “‘[p]arties have a right to have questions answered truthfully by prospective jurors to enable them to exercise their discretion wisely in exercising their peremptory strikes.’ ” ’ State v. Freeman, 605 So.2d 1258, 1259 (Ala.Cr.App.1992) (quoting Ex parte O’Leary, 438 So.2d 1372, 1373 (Ala.1983), quoting in turn Ex parte O’Leary, 417 So.2d 232, 240 (Ala.1982)). ‘Voir dire’ is an ancient phrase which literally means ‘to speak the truth.’ W. LaFave & J. Israel, Criminal Procedure § 22.3(a) (2d. ed.1992). ‘ “Where the party has examined the jurors concerning their qualifications, and they do not answer truly, it is manifest that he is deprived of his right of challenge for cause, and is deceived into foregoing his right of peremptory challenge.” ’ Ex parte Ledbetter, 404 So.2d 731, 733 (Ala.1981) (quoting Leach v. State, 31 Ala. App. 390, 18 So.2d 285, cert. denied, 245 Ala. 539, 18 So.2d 289 (1944)). ‘Failure to enforce the right to elicit from prospective jurors truthful answers to material questions renders hollow the right of peremptory challenge.’ Knight v. State, 675 So.2d at 494 (quoting Mitchell v. State, 458 So.2d 819, 821 (Fla.Dist.Ct.App.1984)).
*1251 “In addressing the issue whether a defendant was deprived of the right to exercise peremptory strikes based on truthful answers from prospective jurors, the Alabama Supreme Court recently reiterated the test to be ‘whether the defendant might have been prejudiced by a veniremember’s failure to make a proper response.’ Ex parte Stewart, 659 So.2d 122, 124 (Ala.1993) (emphasis added). This test casts a ‘light burden ’ on the defendant. Cf. Ex parte Lasley, 505 So.2d 1263, 1264 (Ala.1987) (stated in regard to the test of whether juror misconduct might have influenced the verdict).
“ ‘ “Although the factors upon which the trial court’s determination of prejudice is made must necessarily vary from case to case, some of the factors which other courts have considered pertinent are: temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror’s inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about.” ’
“Johnson v. State, 536 So.2d 957, 958 (Ala.Cr.App.1987), cert. denied, 490 U.S. 1046, 109 S.Ct. 1955, 104 L.Ed.2d 424 (1989) (quoting Smithson v. State, 50 Ala.App. 318, 320-21, 278 So.2d 766 (1973)). See also Campbell v. Williams, 638 So.2d 804, 813 (Ala.1994), cert. denied, 513 U.S. 868, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994). ‘Thus, the facts in each case must be considered individually and much will remain in the discretion of the trial judge.’ Parish v. State, 480 So.2d 29, 30 (Ala.Cr.App.1985).”
Tomlin v. State, 695 So.2d at 169-70.
In applying the “might-have-been-prejudiced standard” the Supreme Court of Alabama has stated:
“The form of prejudice that would entitle a party to relief for a juror’s nondisclosure or falsification in voir dire would be its effect, if any, to cause the party to forgo challenging the juror for cause or exercising a peremptory challenge to strike the juror. Ex parte Ledbetter, 404 So.2d 731 (Ala.1981); Warrick v. State, 460 So.2d 320 (Ala.Crim.App.1984); and Leach v. State, 31 Ala.App. 390, 18 So.2d 285 (1944). If the party establishes that the juror’s disclosure of the truth would have caused the party either to (successfully) challenge the juror for cause or to exercise a peremptory challenge to strike the juror, then the party has made a prima facie showing of prejudice. Id. Such prejudice can be established by the obvious tendency of the true facts to bias the juror, as in Ledbetter, supra, or by direct testimony of trial counsel that the true facts would have prompted a challenge against the juror, as in State v. Freeman, 605 So.2d 1258 (Ala.Crim.App.1992).”
Ex parte Dobyne, 805 So.2d 763, 772-73 (Ala.2001).
Dixon asserted at his hearing on his motion for a new trial that had L.A. truthfully disclosed at the time of voir dire that two charges of harassing communications, a violation of § 13A-ll-8(b), Ala.Code 1975, were pending against her in Escam-bia County, he would have exercised a peremptory challenge to remove her from the jury if, in fact, she were not removed for cause on the basis of a truthful answer that she was currently a criminal defendant in the very county where the instant case was being prosecuted.
L.A. testified at the hearing and asserted that she did not understand that she had been prosecuted because in her conversations with the district attorney of Es-cambia County, Steve Billy, and the victims, she had the understanding that the *1252 victims were not interested in pursuing the case and that it would be continued indefinitely. In reality, after Dixon’s trial, L.A. was placed in a pretrial diversion program and, according to testimony elicited at the hearing on Dixon’s motion, L.A. was not charged any fees or costs normally associated with placement in the program.
As to the standard of review, I am aware that
“ ‘[i]t is well settled that “[a] decision on a motion for a new trial rests largely within the discretion of the trial court, and [that] in reviewing such a decision this court will indulge every presumption in favor of the correctness thereof.” ... “A trial judge’s denial of a motion for new trial will not be disturbed [on appeal] in the absence of a showing of [an] abuse of discretion.” ’ Sistrunk v. State, 630 So.2d 147, 154 (Ala.Cr.App.1993) (citing Brownlee v. State, 545 So.2d 151, 164 (Ala.Cr.App.1988), aff'd, Ex parte Brownlee, 545 So.2d 166 (Ala.1989), cert. denied, Brownlee v. Alabama, 493 U.S. 874, 110 S.Ct. 208, 107 L.Ed.2d 161 (1989)).”
Lane v. State, 708 So.2d 206, 210 (Ala.Crim.App.1997).
Here, however, I believe that analyzing the failure of the juror to respond utilizing the five factors set out in Smithson, as quoted in Tomlin, reveals that the trial judge did indeed abuse his discretion when he denied Dixon’s motion for a new trial.

Temporal remoteness

L.A. was been arrested on February 27, 2007, for harassing communications pursuant to a complaint signed by her ex-husband. L.A. signed an appearance bond in the amount of $500 that required her to appear in the District Court of Escambia County on April 2, 2007, to defend this charge. (R. 186-190.) ■ On March 26, 2007, L.A. was again arrested for harassing communications pursuant to a complaint signed by her daughter. On that date, L.A. signed a second appearance bond in the amount of $500 that required her to appear in the District Court of Escambia County on May 7, 2007, to defend this charge. (R. 181-85.) L.A. testified that on April 3, 2007, Mr. Billy had her criminal cases continued. On April 9, 2007, voir dire was conducted in this case and L.A. was selected as a juror for Dixon’s trial. On May 3, 2007, L.A. was placed in a pretrial diversion program without paying fees associated with, such placement or court costs or fines. Thus, the matters inquired about had occurred within the six-week period before the voir dire in this case, and, considering the personal impact these cases, brought by her own family members against her, would have engendered, there is no reasonable likelihood that L.A. could have forgotten them.

Ambiguity of the question propounded

The majority places great weight upon the trial judge’s grammatical parsing of the question with the implied result being that the question required an answer only if the case against the prospective juror was concluded. The trial judge denied the motion for a new trial in a written order but did not make any findings of fact nor include any discussion of the law.
However, L.A. did not testify that she did not answer this question because she believed the question referred to a past completed prosecution; rather, she testified that she did not answer the question because she did not know that she had been formally charged in a criminal case. Her testimony at the hearing on the motion for new trial was an obvious attempt to explain away her failure to answer. In testifying, she made dubious and inconsistent statements. Although one way to look at the question could be that it re *1253 ferred only to a completed case, L.A. had been a defendant since the day she was arrested and made bond on the first charge. She was subjected to prosecution by the district attorney before and during the period of jury selection in Dixon’s case. Although the question was in a sense ambiguous, a conscientious prospective juror would have responded.

The prospective juror’s inadvertence or willfulness in failing to answer

L.A. had been arrested in two criminal cases, had twice made bond, and had promised to appear in the District Court of Escambia County for two different court dates. She had also talked to the district attorney of Escambia County, had obtained a continuance of both cases, and apparently had discussed both cases with the complainants. In response to a question as to whether she had contacted her sister-in-law, an assistant district attorney in Tuscaloosa County, to discuss the pending charges, L.A. explained: “No, sir. She represents child support cases. She didn’t have anything to do with criminal cases.” (R. 845.)
To conclude, as the majority concludes, that L.A. did not know she was a defendant in a criminal case following two arrests for criminal charges suspends belief. This conclusion requires that we believe that a prospective juror who twice had to appear at the sheriffs office to sign an appearance bond promising to appear in the district court on criminal charges within the six weeks before jury selection in this case did not understand that she was being arrested and did not understand that she was a defendant in a criminal case.
It further requires that we believe that L.A. discussed this matter with Mr. Billy, the district attorney of Escambia County, several times and never gleaned the fact that they were discussing a criminal case in which she was the defendant. We also must believe that L.A.’s comment regarding her sister-in-law, who served as an assistant district attorney in Tuscaloosa County, that “[s]he represents child support cases. She didn’t have anything to do with criminal cases” (R. 845), does not affirmatively show that L.A. was aware that she had been charged with committing criminal acts. The unmistakable conclusion is that the L.A.’s failure to respond was willful.

The failure of the juror to recollect

L.A. must have recollected that she was a defendant in the District Court of Es-cambia County. Her failure to respond may have been the natural human desire not to reveal to a number of people in open court her contentious familial relationships and to keep the internecine squabble that had erupted in her family life away from public view. Clearly, though, she recollected it.

The materiality of the matter inquired about

The State propounded the question at issue to discover whether any of the prospective jurors harbored prejudice against the State; however, with respect to L.A., this knowledge was already in the State’s possession. District Attorney Billy, who was trying this case, had had, within the month before voir dire, at least one conversation with L.A. about her criminal cases. Thus, the State already knew the answer to their question with regard to L.A. Only Dixon’s trial attorney was in the dark.
L.A.’s failure to respond prevented Dixon from discovering that L.A. was subject to the decisions of the district attorney regarding her two cases. Prosecutorial discretion would have allowed the State to go forward in the case against L.A. even if *1254 the complainants had decided that they no longer wished to pursue the cases. The prosecutor could agree to a continuance or not and could offer pretrial diversion or not. The prosecutor could elect to try the cases and, if L.A. was convicted, argue to the district court and ask for a jail sentence, a fíne, probation, or any of the myriad sentences a criminal defendant is subject to receive.
Had L.A. answered truthfully, Dixon’s counsel would have had the opportunity to question L.A. further and to discover whether her relationship with the district attorney’s office was contentious, friendly, or servile. Certainly it would be a serious concern if a prospective juror was subject to the discretionary decisions of the district attorney. Human nature being what it is, it would have been natural for defense counsel to be suspicious about a juror who was beholden to the State, and to be reluctant to take the chance that the juror might be biased and wanting to curry favor with the State by voting to convict. Indeed, trial counsel testified that had L.A. been truthful he would have attempted to strike her for cause, and, failing that, he would have exercised a peremptory challenge and struck her from the venire.
Both methods of establishing prejudice set out by Ex parte Dobyne — the obvious tendency of the facts to bias the prospective juror, and testimony by trial counsel that had the facts been known he would have challenged the juror — have been shown to exist in this case.
Based on the above, there is no doubt that L.A.’s failure to answer constituted juror misconduct. The only question is whether that misconduct requires a new trial.
The test used to determine whether the petitioner was prejudiced by the juror’s failure to respond is whether the petitioner might have been prejudiced. See Leach v. State, 31 Ala.App. 390, 18 So.2d 285 (1944); Wallis v. State, 38 Ala.App. 359, 362, 84 So.2d 788, 790 (1955); Beauregard v. State, 372 So.2d 37, 40-41 (Ala.Crim.App.1979); Ex parte Ledbetter, 404 So.2d 731, 732 (Ala.1981); Ex parte Stewart, 659 So.2d 122 (Ala.1993); Tomlin v. State, 695 So.2d 157 (Ala.Crim.App.1996); Ex parte Dobyne, 805 So.2d 763 (Ala.2001).
It would seem to me that it is intellectually dishonest to pretend that Dixon was not prejudiced by L.A.’s silence. The record clearly reflects that at the time of voir dire L.A. was a criminal defendant, who for all practical purposes was in the middle of negotiating a plea agreement with the State. I believe that it would be difficult for a juror in L.A.’s position to be unbiased. I certainly do not believe that we can presume, despite L.A.’s protest to the contrary, that she was unaffected by her relationship with the State.
“ ‘Impartiality, freedom from bias or prejudice, capacity without fear, favor, or affection, a true deliverance to make between the accused and the State, the law demands as the qualification of a juror .... It is not only such (family) relationship, but temporary relations, formed in the course of business, or in the intercourse of life, which may disqualify, whenever they may import a just belief of a want of impartiality— that a juror can not stand indifferent, either from interest, or from the favor springing out of the relation.’ ”
Leach v. State, 31 Ala.App. at 391-92, 18 So.2d at 287 (quoting Brazleton v. State, 66 Ala. 96 (1880)).
The majority bases part of its rationale for finding that the State had rebutted any prejudice to Dixon on L.A.’s answer, “Absolutely not,” when she was asked if the *1255 pending charges affected her verdict. (R. 654.)
It is a fundamental concept in the United States of America that criminal defendants are entitled to a jury composed of jurors who are fair. Jurors know that it is their job to be fair and to avoid prejudice and bias. They are so instructed during the court’s oral charge. After a trial, asking a juror if her verdict was affected by anything that would reflect on her ability to be fair, especially after that juror has been thoroughly questioned by defense counsel, is extremely unlikely to elicit a positive response. In essence, the juror would have to admit her misconduct or bias in open court and to testify that she intentionally disregarded her duty to be fair. The juror would be unfamiliar with what would be the personal consequences of such an admission and might very well fear that she would be held in contempt or charged with a crime such as obstruction of justice if she admitted that her verdict was tainted by her bias. For these reasons it is unwise to place great weight on an answer affirming a lack of bias.
Thus, I believe that the circuit court abused its discretion, in denying Dixon’s motion for a new trial, and I would reverse and remand for a new trial.
In addition I would urge the Alabama Supreme Court to revisit its analysis in Dobyne. In Dobyne the Court stated that “probable prejudice” and “might have caused prejudice” are the same standard of review. Ex parte Dobyne, 805 So.2d at 772 n. 1 (quoted infra). I would ask the Alabama Supreme Court to reconsider that conclusion. Bryan A. Garner, author of A Dictionary of Modem Legal Usage (2nd ed.1995), offered the following comparison of “probable, likely, possible”:
“probable; likely; possible. These words — in order of decreasing strength — express gradations of the relative chance that something might happen. With a coin toss, for example, you cannot say that it is probable that it will turn up heads, though you might say this it is likely. (Of course, it would be equally likely to turn up tails.) The word likely, then, as Glanville Williams puts it, is ‘a strong “possible ” but a weak “probable.”’ Glanville Williams, Criminal Law 59 (2nd ed.1961). And the word possible, of course, embraces a wide gamut: everything from the remotest chance to a 100% certainty.”
Id. at 693-94.
I believe that “might,” which is defined as “less probability or possibility than may,” Webster’s Third New International Dictionary 1432 (1976), is a term referencing any possibility that is less than absolute — whether it be probable, likely, or possible. Thus, “might-have-prejudiced” includes the not only the chance of probable prejudice, but also the chances of likely-to-prejudice and possibly prejudice. Nevertheless, it appears that what began as two distinct standards of review — “probable prejudice” and “might-cause-prejudice”— merged when the authority used to analyze a juror’s failure to answer questions on voir dire was applied to analyze cases concerning juror misconduct occurring during deliberations. See Leach v. State, 31 Ala.App. 390, 18 So.2d 285 (1944); Wallis v. State, 38 Ala.App. 359, 362, 84 So.2d 788, 790 (1955); Beauregard v. State, 372 So.2d 37, 40-41 (Ala.Crim.App.1979); Ex parte Ledbetter, 404 So.2d 731, 732 (Ala.1981); Ex parte Troha, 462 So.2d 953, 953-954 (Ala.1984); Ex parte Dobyne, 805 So.2d 763 (Ala.2001). The “might-have-prejudiced” standard of review presented a lighter burden than the “probable prejudice” standard of review.
In a footnote, the Dobyne court stated:
“Two separate standards had previously existed for civil and criminal cases *1256 in regard to the standard to be applied, the Roan [v. State, 225 Ala. 428, 143 So. 454 (1932),] test of ‘might have been influenced’ in criminal cases, and the Freeman [v. Hall, 286 Ala. 161, 238 So.2d 330 (Ala.1970) ] test of ‘probable prejudice’ in civil cases. In Ex parte O’Leary, 438 So.2d 1372 (Ala.1983), a criminal case involving a possession-of-marijuana charge, this Court relied upon the discussion in Burroughs Corp. v. Hall Affiliates, Inc., 423 So.2d 1348 (Ala.1982), a civil case, discussing the ‘might-have-been-prejudiced’ standard as employed in Ex parte Ledbetter, 404 So.2d 731 (Ala.1981), 'and the ‘probable-prejudice’ standard advanced by Freeman. This Court then stated that ‘we follow the Freeman standard and opine that the false answers given [on voir dire] resulted in probable prejudice to O’Leary.’ O’Leary, 438 So.2d at 1375. These two standards are arguably different. However, since O’Leary, the standards have become intertwined. See, e.g., Apicella v. State, [809] So.2d [841] (Ala.Crim.App.2000); Travis v. State, 776 So.2d 819, 847 (Ala.Crim.App.1997); Tomlin v. State, 695 So.2d 157, 169 (Ala.Crim.App.1996); Knight v. State, 675 So.2d 487, 494 (Ala.Crim.App.1995); State v. Freeman, 605 So.2d 1258, 1259 (Ala.Crim.App.1992); State v. Gilbert, 568 So.2d 876, 878 (Ala.Crim.App.1990); Washington v. State, 539 So.2d 1089, 1095 (Ala.Crim.App.1988); Clark v. State, 551 So.2d 1081, 1088 (Ala.Crim. App.1986); and Neelley v. State, 494 So.2d 669, 680 (Ala.Crim.App.1985).
Ex parte Dobyne, 805 So.2d at 772 n. 1.
All the cases cited in Dobyne for the proposition that the standards have intertwined are cases of juror misconduct by a member of the trial jury; none involve prospective jurors not responding truthfully during participating voir dire.
A different analysis is required for an inquiry into juror misconduct in responding or failing to respond to questions during voir dire than the analysis required for instances of juror misconduct occurring during the juror’s service as a member of the trial jury, such as performing an experiment, talking with parties or persons related to or employed by parties, or any other improper influence during the trial.
If indeed the two standards have merged[1] and lost their original character to differentially analyze juror misconduct in a criminal or civil case, a more useful method of using the two terms would distinguish between the misconduct of a prospective juror and the misconduct of a trial juror who has already been selected and who is involved in the trial of a case or in deliberations.
It appears to me that the more burdensome “probable-prejudice” standard should be used to protect a defendant’s due-process rights in cases where the juror misconduct occurs during voir dire, whereas the less demanding “might-have-caused- *1257 prejudice” standard should apply to protect due-process rights and the sanctity of jury deliberations where the jurors misconduct occurs during a trial. See Freeman v. Hall, 286 Ala. 161, 165-67, 238 So.2d 330, 334-36 (1970); Ex parte O’Leary, 438 So.2d 1372, 1375 (Ala.1983); Union Mortg. Co. v. Barlow, 595 So.2d 1335 (Ala.1992); Campbell v. Williams, 638 So.2d 804, 813 (Ala.1994); Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 4 (Ala.2007).
For the above reasons, I respectfully dissent.

. In Dobyne, the Supreme Court interpreted Ex parte O'Leary, 438 So.2d 1372 (Ala.1983), as having established a "probable-prejudice” standard for criminal cases. I question whether it was the intention of the O'Leary Court to signal a complete departure from the "might-have-been-prejudiced” standard in criminal cases. That Court stated no rationale for changing the standard and there was no discussion of why that Court decided to use probable prejudice; moreover, it explicitly limited its holding to that case: "In this case we follow the Freeman standard and opine that the false answers given by Odom resulted in probable prejudice to O'Leary.” O'Leary 438 So.2d at 1374. However, I agree that the practical effect of that case was to blur the distinction between the two standards, and there is no longer any attempt by the appellate courts of this State to apply a criminal case/civil case dichotomy.