167 So.2d 274

**MALONE FREIGHT LINES, INC.**

v.

**L. C. McCARDLE.**

**6 Div. 874.**

Supreme Court of Alabama.

Sept. 3, 1964.

E. Ray Large, Birmingham, for appellee.

Maurice F. Bishop, Birmingham, for appellant.

COLEMAN, Justice.

Defendant appeals from judgment for plaintiff, on jury verdict, in action for damage to plaintiff's tractor caused by fire and alleged to be the proximate result of defendant's negligence in servicing a fire extinguisher which was affixed to and carried on the fender of plaintiff's tractor.

Plaintiff alleges that defendant, as a condition of a contract entered into by plaintiff and defendant, had required plaintiff to purchase the extinguisher from defendant and affix it to plaintiff's tractor which plaintiff was using, together with a trailer furnished by defendant, to haul freight pursuant to the contract.

Two principal questions are presented. First, is the complaint sufficient against defendant's demurrer? Second, is the evidence sufficient to submit the case to the jury?

The complaint recites:

"Come the plaintiffs in the above styled cause and claim of the defendants the sum of Five Thousand Dollars ($5,000.00) as damages for that heretofore on, to-wit: December 9, 1958 the plaintiffs were operating a tractor-trailer unit as independent contractors while engaged in a contract with the defendants whereby the plaintiffs were to haul freight designated by the defendants to a destination designated by the defendants for a consideration from the serviced party which consideration

was to be shared by the plaintiffs and defendants: that the defendants required of the plaintiffs as a condition of said contract or by rules and regulations promulgated by authority of said contract, that the plaintiffs purchase a fire extinguisher from the defendants and affix same . . . to the aforesaid tractor-trailer unit; and plaintiffs did comply with said condition on, to-wit: December 15, 1957; that the defendants did purport to service and put in good working order said fire extinguisher on, to-wit: November 28, 1958, but negligently failed to do so; that on, to-wit: December 9, 1958, plaintiffs' tractor-trailer unit to which said fire extinguisher was affixed caught fire on or near public Highway Number Seventy-Eight, to-wit: two miles East of Guin, Alabama; that said fire was small and confined to a small area of said tractor when first discovered by the plaintiffs who immediately upon discovery attempted to extinguish said fire with said negligently serviced fire extinguisher and as a proximate result of the aforesaid negligence of the defendants the fire extinguisher failed or refused to function and said tractor was consumed by flames."

The complaint was amended to make the words plaintiffs and defendants read plaintiff and defendant, and to make December 15, 1957, read November 15, 1958.

Defendant argues that the complaint is insufficient in two particulars. Grounds of demurrer 8, 9, 14, 25, 26, and 33 raise the first point that the facts alleged do not show that defendant has breached any duty owed by defendant to plaintiff. Grounds 12, 19, 21, 28, and 29 raise the second point that the allegations do not show that defendant's negligence was the proximate cause of plaintiff's loss. We hold both points well taken.

■ In every case founded on actionable negligence, three elements are essential to its existence: (1) The existence of a duty

on the part of the defendant to protect the plaintiff from the injury of which he complains; (2) a failure by the defendant to perform that duty; and (3) an injury to the plaintiff from such failure of the defendant. When these elements are brought together, they unitedly constitute actionable negligence. The absence of any one of these elements renders a complaint bad or the evidence insufficient. Tennessee Coal, Iron & R. R. Co. v. Smith, 171 Ala. 251, 255, 256, 55 So. 170; Stokely-Van Camp, Inc. v. Ferguson, 271 Ala. 120, 122 So.2d 356.

In the instant complaint, the pertinent allegations to show the existence of defendant's duty are: plaintiff was operating a tractor-trailer unit . . . . while engaged in a contract with defendant whereby plaintiff was to haul freight, to a destination designated by defendant, for a consideration to be shared by plaintiff and defendants; that defendant, as a condition of the contract, required plaintiff to purchase from defendant a fire extinguisher and affix it to the tractor-trailer unit; that plaintiff complied with the condition on November 15, 1958; "that the defendant did purport to service and put in good working order said fire extinguisher on, to-wit: November 28, 1958, but negligently failed to do so."

We are of opinion that the facts alleged do not show that defendant owed to plaintiff a duty to exercise reasonable care in servicing the extinguisher.

█ The rule has been stated, we think correctly, that one who contracts to make repairs, and performs the work in an unskillful or negligent manner, is liable for the damage resulting from the improper performance, and which can be regarded as having been within the contemplation of the parties. 1 A.L.R. 1654. See also: 38 Am.Jur. 662, Negligence, § 20; 65 C.J.S. p. 639 Negligence § 101. Application of the rule may be found in Livermore Foundry & Mach. Co. v. Union Compress & Storage Co., 105 Tenn. 187, 58 S.W. 270, 53 L.R.A.

482; and Burr v. Clark, 30 Wash.2d 149, 190 P.2d 769.

█ Plaintiff, in the instant case, however, does not allege that, as a condition or promise under the hauling contract, defendant undertook to service or repair the extinguisher and put it in good working order; and plaintiff does not allege a new or separate contract whereby defendant undertook or agreed to service or repair the extinguisher. The allegation is merely that defendant "did purport" to service the extinguisher.

In Webster's New International Dictionary of the English Language, G. & C. Merriam Company, 1926, page 1739, purport, as a verb, is defined as follows:

"To have the appearance or convey the impression of being, meaning, or signifying (some particular thing); to import; to mean or seem to mean or intend;—often with an object clause or infinitive; as, the letter *purports* to be from the president; the law *purports* to be in the interest of morality."

In Webster's Third New International Dictionary, G. & C. Merriam Co., 1961, page 1847, purport is defined as:

"1 : to convey, imply, or profess outwardly (as meaning, intention, or true character): have the often specious appearance of being, intending, claiming (something implied or inferred): IMPART, PROFESS (a letter that purports to express public opinion) (a law that purports to be in the interest of morality) (men purporting to be citizens) 2 : to have in mind: INTEND, PURPOSE."

Construed most strongly against the pleader on demurrer, the allegation can be taken to mean that defendant had in mind or intended to service the extinguisher but negligently failed "to do so"; that is, negligently serviced or negligently intended to service it. Whether the negligence was in the servicing or in the intending is not clear.

For defendant to owe a duty to exercise reasonable care in repairing the extinguisher, defendant must have done more than merely intend to service it. Because the complaint fails to allege facts out of which the duty of defendant arises, the grounds of demurrer taking that point should have been sustained.

The second question raised by the demurrer is: Does the complaint show that defendant's negligence in servicing the extinguisher was the proximate cause of the burning of the tractor?

Pertinent allegations are: plaintiff's tractor-trailer unit caught fire; the fire was small and confined to a small area when plaintiff discovered it; plaintiff immediately attempted to extinguish the fire with the extinguisher; as a proximate result of the negligence of defendant, the extinguisher failed to function and the tractor was consumed by the fire.

Plaintiff does not allege that the extinguisher, if in good working order, was an instrument adequate and sufficient to put out the fire. For aught that is alleged, even if defendant had properly serviced the extinguisher and it had been in good working order, the extinguisher may not have been an instrument adequate and sufficient to extinguish the fire. Because that construction of the complaint is against the pleader, that construction must be adopted. Under that construction, even if the extinguisher had worked properly, plaintiff could not have put out the fire and his tractor would have burned anyway. Under that construction, defendant's negligence in servicing the extinguisher would not have had any effect on the loss and would not be a proximate cause of plaintiff's loss.

When the complaint is so construed, it fails to show the third essential element, i. e., an injury to plaintiff proximately resulting from defendant's breach of duty. Tennessee Coal, Iron & R. R. Co. v. Smith, supra. Because the complaint fails to show that defendant's negligence was the proxi-mate cause of plaintiff's loss, the grounds of demurrer taking that point should have been sustained.

In view of another trial we deem it proper to consider the second principal question; i. e., whether the evidence is sufficient to take the case to the jury.

Defendant argues that it was entitled to the affirmative charge because the evidence was insufficient in three particulars: (1) the evidence will not support a finding that defendant was guilty of negligence in servicing the extinguisher; (2) the evidence fails to show that defendant's negligence was the proximate cause of plaintiff's loss; and (3) the evidence shows that the proximate cause of plaintiff's loss was an independent, intervening agency, the fire, for which defendant was not responsible.

Pertinent evidence is to the following effect.

There is no direct testimony as to what defendant's employees did or did not do in repairing the extinguisher. Plaintiff testified that defendant placed the extinguisher on plaintiff's tractor on November 17, 1958, and that plaintiff protested, but to no avail.

The extinguisher was placed in evidence and is before us. It has a gauge with a needle, which registers air pressure within the extinguisher. It has also an aperture, or "peep-hole" through which an observer may look to see fluid inside the extinguisher. Plaintiff testified that, after the fire, he kept the extinguisher in his possession and delivered it to his attorney.

The fire occurred between midnight and daylight December 9, 1958. Plaintiff testified that about "ten days to two weeks before the fire," he noticed the gauge "going down" and took the extinguisher to defendant's shop and "asked the man there to check it out"; the man took it off the tractor; he was a colored fellow; plaintiff does not know his name but has seen him "around there before that" and did see him

after that; the man took the extinguisher back into the shop, was gone approximately thirty minutes, brought the extinguisher back, "and said it was fine."

Plaintiff testified that at about 8:30 p.m., December 8, 1958, he left Birmingham with a load of steel; he had no trouble until the incident of the fire; he was going up a hill; there were separate saddle tanks containing fuel on the tractor; one tank ran empty and plaintiff switched from the empty tank; "there was a spit and back fire, which happens in a lot of cases that way"; then plaintiff smelled smoke and it got warm in the cab; on the crest of the hill, plaintiff "pulled over" and walked or ran around the truck; smoke was coming up through the floorboard at that time; when plaintiff raised the hood "there was a small fire" but a lot of smoke; plaintiff took the fire extinguisher off the truck "and tried to twist the handle and began to point the hose towards the flame and nothing happened, no fluid or nothing came out"; plaintiff opened the door to get the other extinguisher which was in the cab, but due to the smoke could not get that extinguisher; a truck loaded with coal came up, but that truck had no extinguisher; then another of defendant's trucks, driven by Tankersley, came up and stopped; Tankersley brought his fire extinguisher but it "wouldn't work." Tankersley was called as a witness by defendant and testified that nothing was wrong with his extinguisher; that he attempted to use his extinguisher, "but the fire was already out of control at that time."

Plaintiff testified that he did not get any tetrachloride out of his extinguisher, that he "couldn't get it to pump up; no pressure, nothing came out of the hose"; that he tried both automatic and manual pressure.

Plaintiff testified that when he left Birmingham on the night of December 8th the pressure gauge on the extinguisher "showed up, . . . . Showed between 100 and 110"; that the extinguisher was on the truck from the time he left Birmingham until the fire, that plaintiff knows of; that as long as

gauge was up plaintiff "assumed that the extinguisher was all right"; after the fire began, plaintiff checked the gauge as soon as he could not "get anything to come out of the hose," and the gauge showed "Empty."

A witness, who was an expert on fire extinguishers, testified that he had examined the extinguisher on the day of the trial in February, 1962; that the valve appears to be working; that with the valve working and "the air gauge showing some 100–110, and looking into the eye and showing that tetrachloride was in the unit, and assuming that you hold it and some even today pours out," there is nothing, in the opinion of the witness, to prevent the extinguisher from working; that carbon tetrachloride has a tendency to destroy any metal, except copper or brass, on contact; that if the extinguisher is fully charged with carbon tetrachloride, it will not deteriorate, but after part of the fluid has been used, and "letting it set" for thirty to ninety days, the deterioration will be so great that the extinguisher will be beyond repair, "So, there is no way of my honestly saying today whether the pump worked in 1958 or not. But, had it been in working order, it would not likely work today."

Does this stated evidence support a finding that defendant was negligent in servicing the extinguisher? We hold that it does not.

That the extinguisher was not in good working order at the time of the fire is shown by plaintiff's testimony. That the extinguisher was not in good working order ten days or two weeks earlier, after defendant's employee serviced it, must rest in inference.

"When the existence of an object, condition, quality, or tendency at a given time is in issue, the *prior existence* of it is in human experience some indication of its probable persistence or continuance *at a later period*.

"The degree of probability of this continuance depends on the chances of

intervening circumstances having occurred to bring the existence to an end. The possibility of such circumstances will depend almost entirely on the nature of the specific thing whose existence is in issue and the particular circumstances affecting it in the case in hand. That a soap-bubble was in existence half-an-hour ago affords no inference at all that it is in existence now; that Mt. Everest was in existence ten years ago is strong evidence that it exists yet; whether the fact of a tree's existence a year ago will indicate its continued existence to-day will vary according to the nature of the tree and the conditions of life in the region. So far, then, as the *interval of time* is concerned, no fixed rule can be laid down; the nature of the thing and the circumstances of the particular case must control.

"Similar considerations affect the use of *subsequent existence* as evidence of existence at the time in issue. Here the disturbing contingency is that some circumstance operating in the interval may have been the source of the subsequent existence, and the propriety of the inference will depend on the likelihood of such intervening circumstances having occurred and been the true origin. On landing at New York it can hardly be inferred that the steamer at the next dock has been there for a week; but it may usually be inferred that the dock has been there for some years; while the particular circumstances of appearance and the like will in the latter instance affect the length of time to which the inference could be carried back. Here, as with prior indications, the *interval of time* to which any inference will be allowable must depend upon the nature of the thing and the circumstances of the particular case.

"The opponent, on the principle of Explanation (ante, § 34), may always attempt to explain away the effect of the evidence by showing that in the meantime other circumstances have occurred to raise a probability of change instead of continuance.

" . . ." Wigmore on Evidence, Vol. II, § 437, pages 413, 414

See: 80 A.L.R. 446; Alabama Power Company v. Owens, 236 Ala. 96, 181 So. 283; Louisville & Nashville R. Co. v. Lowe, 158 Ala. 391, 48 So. 99; Jackson Lumber Co. v. Cunningham, 141 Ala. 206, 37 So. 445.

In the case at bar, if, within an hour after defendant had serviced the extinguisher, plaintiff had attempted to use it and it had failed to work, the evidence that the extinguisher did not work an hour after the attempted repair, would, in the absence of a showing that some other cause had operated on the extinguisher, not only be relevant but most persuasive to show that the extinguisher was not in good working order when defendant's employee said it was. Here the time lapse is not one hour but ten days to two weeks. Here there is no showing of any extraneous cause operating on the extinguisher to make it fail to function. The testimony of the expert is that after part of the tetrachloride had been used, the extinguisher would be beyond repair after 30 to 90 days. The interval here, however, is not more than two weeks. We are aware that Wigmore and the cited cases deal with admissibility more than sufficiency of evidence to show prior condition, but if the evidence is admissible it is admissible because it is relevant and tends to prove the prior condition.

■ We are of opinion that the evidence showing the condition of the extinguisher at the time of the fire is relevant to show the condition two weeks earlier when defendant repaired it and sufficient to support an inference that the extinguisher was not in good working order when defendant's employee said "it was fine."

That defendant was negligent in servicing the extinguisher remains to be shown. If that fact be shown at all, it is shown as an

inference drawn from the fact that the extinguisher was not in good repair when defendant's employee returned the extinguisher to the tractor and said the extinguisher was fine. This latter fact itself rests wholly on inference and not on direct testimony.

■ One fact cannot be inferred from another fact which is itself an inference, since an inference cannot be grounded on an inference. Woodward Iron Co. v. Goolsby, 242 Ala. 329, 6 So.2d 11.

The proof, therefore, fails to support the allegation that defendant negligently serviced the extinguisher, and, because of that failure, defendant was entitled to the affirmative charge.

In support of the second deficiency in the evidence insisted on by defendant; i. e., that it fails to show that defendant's negligence was the proximate cause of plaintiff's loss; defendant says the evidence fails to show that the extinguisher, if in good repair, would have been adequate to put out the fire.

■ Plaintiff testified that the fire, when discovered, was "a small fire," and "the flame was no larger than one hand." Under all the evidence, we think the jury could find that the extinguisher, if properly working, would have been adequate to extinguish the fire and save plaintiff's tractor from at least some of the damage sustained.

Defendant argues also that it was due the affirmative charge because the evidence not only fails to show that defendant's negligence in servicing the extinguisher was the proximate cause of damage to the tractor, but also shows that the proximate cause was an independent, intervening agency, the fire, for which defendant was not responsible.

This court has said:

" . . . . The logical rule . . . is that a person guilty of negligence should be held responsible for all the consequences which a prudent and experienced man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would, at the time of the negligent act, have thought reasonably possible to follow, if they had occurred to his mind. . . . . " Armstrong, Adr'x v. Montgomery Street Railway Co., 123 Ala. 233, 249, 250, 26 So. 349, 354; Goodwyn v. Gibson, 235 Ala. 19, 177 So. 140.

■ The fire was an intervening, independent cause in the sense that defendant did not cause it, but was the fire an unforeseen cause of the loss? We think the jury could find that the fire was foreseen. Why did defendant require plaintiff, as a condition of the contract, to install the extinguisher if the possibility of fire was not foreseen? To ask the question seems to answer it. Anticipation of fire was the precise reason for installing the extinguisher. No other reason is suggested. We are of opinion that the fire was not an intervening, independent, unforeseen cause which insulated defendant's alleged negligence from becoming a proximate cause of plaintiff's loss.

For errors in overruling the demurrer to the complaint and in refusing the affirmative charge requested by defendant, the judgment is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.