[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1356 
Willie C. Dobyne was convicted of capital murder committed during the course of a robbery, and the trial judge sentenced him to death following the jury's recommendation of that sentence.
Linda Snipes and Leon Billingsley were both employees of the County Truck Stop outside Brent, Alabama. Early one morning in January 1991, Dobyne and his codefendant, Cleophus Dukes, went to the County Truck Stop. As they entered the truck stop, Dobyne shot Billingsley in the back with a shotgun, and Dukes shot Snipes in the upper chest and neck, also with a shotgun. Both victims died as a result of their wounds. After the shootings, Dobyne and Dukes took Snipes's purse and the cash register, containing approximately $200. They disposed of the cash register and shotguns.
In May 1991, Dobyne told his half-brother, Joshua Suttles, of his involvement in the shootings. In June 1991, Suttles told the sheriff about Dobyne's involvement in the shootings. Suttles agreed to be wired with a transmitter and to talk to Dobyne. After Suttles met and talked with him, Dobyne surrendered to the police.
As noted above, a jury convicted Dobyne and the court sentenced him to death. After Dobyne was convicted, Dukes pleaded guilty and was sentenced to life without parole.
Dobyne appealed his conviction and sentence to the Court of Criminal Appeals, raising 26 issues. That court affirmed the conviction and sentence. Dobyne v. State, 672 So.2d 1319
(Ala.Crim.App. 1994). Because of Dobyne's death sentence, this Court automatically granted certiorari review. Rule 39(c), Ala.R.App.P.
Dobyne first argues that he was prejudiced because, he says, the jury pool did not represent physically disabled persons in Bibb County. Specifically, Dobyne contends that his right to a fair cross-section of the community was violated because, he says, physically disabled persons were systematically excluded from jury service in Bibb County. Dobyne contends that more than 5% of the population of Bibb County is physically handicapped, and that he was prejudiced by the removal of physically handicapped jurors because, he says, they would have been more likely to understand and give mitigating weight to the evidence of his own psychological impairments that was presented at the penalty phase.
Selection of a petit jury from a representative cross-section of the community is an essential component of theSixth Amendment right to a jury trial. Taylor v. Louisiana,419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). Section 12-16-55, Ala. Code 1975, also requires that all persons selected for jury service be selected at random from a fair cross-section of the population of the area served by the court and that all qualified citizens have the opportunity to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose.
In order to establish a prima facie violation of the fair-cross-section requirement, a defendant must show (1) that the persons alleged to have been excluded constitute a distinctive group in the community; (2) that the representation of the group on venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process. Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664,58 L.Ed.2d 579 (1979). Rayburn v. State, 495 So.2d 733
(Ala.Cr.App. 1986).
Dobyne has the burden to prove a prima facie case. To establish a fair-cross-section *Page 1357 
violation, Dobyne presented testimony of Dr. Donald Bogie, a professor of sociology and director of the Center for Demographics and Cultural Research at Auburn University. Dr. Bogie testified that, according to the 1980 census, physically disabled persons constituted 5.1% of the Bibb County population over 16 years old.[1] He also testified that physically disabled people are looked upon as constituting a significant social category.
Dobyne also presented the testimony of R.L. Foster, the circuit clerk of Bibb County. Mr. Foster testified that upon request he and members of his staff routinely excuse physically disabled persons called for jury service in Bibb County. However, Mr. Foster also testified that a physically disabled person has never been excluded from jury service without having first requested to be excluded.
As noted before, selection of a petit jury from a representative cross-section of the community is essential to a fair and impartial jury trial. Without reaching the question whether the physically disabled constitute a "distinctive group," we think it clear that there was no violation of the fair-cross-section requirement in this instance, because physically disabled persons were selected at random from a fair-cross-section of Bibb County and were called for jury service. They were members of the jury pool from which Dobyne's venire and all other Bibb County jury venires were drawn. There was evidence presented that there was no systematic exclusion of physically disabled jurors; rather, the evidence revealed only that those physically disabled jurors excluded had themselves requested to be excluded from jury service. Under these circumstances, we conclude that Dobyne has failed to establish that the jury pool did not represent a fair cross-section of the community from which his jury was drawn. Therefore, Dobyne's argument on this issue is without merit.
Dobyne next argues that the trial court erred in refusing to provide him funds to pay for the expert assistance of a neurologist, who, Dobyne contends, could have presented compelling mitigating evidence that Dobyne suffered from brain damage.
In Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087,84 L.Ed.2d 53 (1985), the United States Supreme Court held that an indigent defendant is entitled, under the Due Process Clause of the United States Constitution, to expert psychiatric assistance when the defendant's sanity is a significant issue. The Supreme Court expressed concern that the indigent defendant have access to a "competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Ake, 470 U.S. at 83,105 S.Ct. at 1096.
The Supreme Court did not address the precise issue whether an indigent defendant would be entitled to the assistance of a psychiatric expert when diminished mental capacity, rather than insanity, is the issue at trial, or when diminished mental capacity is the issue at a capital sentencing hearing.
However, in Dubose v. State, 662 So.2d 1189 (Ala. 1995), this Court held that the Ake principles relating to assistance of experts are not limited to psychiatrists. The Ake principles, which are grounded in the due process guarantee of fundamental fairness, apply to assistance by nonpsychiatric experts when an indigent defendant makes a proper showing that the requested assistance is needed in order for the defendant to have "a fair opportunity to present his defense." Dubose, 662 So.2d at 1194. Specifically, a defendant, in order to be entitled to funds to pay for an expert, must show more than a mere possibility that he or she will receive useful assistance from the expert. Rather, the defendant must show a reasonable probability that the expert would aid in the defense and that the denial of an expert to assist at trial would result in a fundamentally unfair trial. In the past, Alabama decisions have been based upon whether the defendant made an adequate showing of a need for the requested expert. Dubose, 662 So.2d at 1191; see also,Smith v. State, 623 So.2d 369 (Ala.Cr.App. 1992), cert. denied, *Page 1358 
___ U.S. ___, 114 S.Ct. 650, 126 L.Ed.2d 607 (1993); McLeod v. State,581 So.2d 1144 (Ala.Cr.App. 1990); Siebert v. State,562 So.2d 586 (Ala.Cr.App. 1989), aff'd, 562 So.2d 600 (Ala.), cert. denied, 498 U.S. 963, 111 S.Ct. 398, 112 L.Ed.2d 408 (1990);Stewart v. State, 562 So.2d 1365 (Ala.Cr.App. 1989); McGahee v.State, 554 So.2d 454 (Ala.Cr.App.), aff'd, 554 So.2d 473
(Ala. 1989).
Dobyne was evaluated by the lunacy commission at the Taylor Hardin Secure Medical Facility in Tuscaloosa, Alabama. The evaluation was conducted to determine Dobyne's competency to stand trial and to determine his mental state at the time of the crime. Dr. Kathy A. Rogers conducted the evaluation on October 18, 1991, and found that Dobyne was competent to stand trial. In her evaluation, she stated that she found no evidence of any type of major psychiatric disorder. Dr. Rogers noted Dobyne's history of drug and alcohol abuse, noted his history of hallucinations while smoking crack cocaine, noted that his intellectual functioning was probably within the borderline range to perhaps the upper portion of the mild-mentally-retarded range, and noted that Dobyne had received a head injury at age five. Dr. Rogers also noted that she found no evidence of any type of gross neurological damage.
On January 24, 1992, Dobyne filed a motion for funds to hire a "mitigation investigator" to conduct a full investigation into Dobyne's background. In his motion, Dobyne stated that his mother had left him at a young age, that his mother and father had abused alcohol during his formative years, that his mother was a heroin addict, that he had a long history of substance abuse, and that, from the age of 17, he had had a history of attacks during which he was unable to breathe and during which he experienced chest pains. The trial court granted this motion on February 21, 1992, and Neil Hartley, mitigation coordinator with the Alabama Prison Project, was retained to conduct investigative work.
On March 23, 1992, Dobyne filed a motion for funds to hire a psychologist. Dobyne attached to this motion a letter from Dr. Robert D. Lyman, a clinical psychologist. Dr. Lyman stated that Dobyne's history of fetal alcohol syndrome, head injury, low IQ, tremors, and seizure disorders indicated a need for comprehensive neurological and neuropsychological evaluations. Dr. Lyman intended to conduct the neuropsychological evaluation; he made recommendations for neurologists that might be willing to conduct a neurological examination. In his motion Dobyne requested only funds to hire a psychologist. This motion was granted, and Dr. Lyman conducted a neuropsychological evaluation.
On April 16, 1992, Dobyne filed a motion for funds to hire a neurologist. In support of his motion, Dobyne again cited his history of head injury, low IQ, seizures, and drug and alcohol abuse. Dobyne attached to this motion a letter from Dr. Lyman, in which Dr. Lyman stated that he felt that both neurological and neuropsychological evaluations were needed. Dr. Lyman conducted the neuropsychological evaluation and explained that such an evaluation involves the assessment of such functional abilities as memory, problem solving, and language, through the use of standardized psychometric tests. Neuropsychological evaluation results are able to describe the functional deficits related to neurological conditions. Dr. Lyman explained that testing in a neurological examination includes such procedures as an EEG, an MRI, and a CT scan, and that that testing would assess and localize anatomical and physiological details of any neurological dysfunction. The trial court, on April 17, 1992, denied the motion for funds to hire a neurologist.
As we stated in Dubose, a defendant seeking expert assistance must show a reasonable probability that the expert would aid in the defense and that the denial of an expert to assist at trial would result in a fundamentally unfair trial. Dobyne failed to make such a showing. Dubose involved "critical" DNA evidence that directly linked Dubose to the crime. This Court held that Dubose had made an adequate showing of the need for the requested services of a DNA expert. Here, Dobyne requested funds to hire a neurologist to present evidence of mitigating circumstances at the penalty phase of the trial. While we agree that there can be a need for expert assistance at *Page 1359 
the penalty phase of a capital trial, Dobyne has not shown that the denial of funds to hire a neurologist resulted in unfairness to him. Dobyne was granted funds to hire a psychologist, and that psychologist conducted a neuropsychological evaluation. Dr. Lyman's evaluation described Dobyne's functional deficits that were related to neurological conditions. A neurological evaluation would determine whether Dobyne had actual brain damage. However, Dr. Lyman testified that Dobyne evidenced characteristics of a person with such a neurological condition. A neurological evaluation would merely be redundant of such testimony and would add nothing significant. We find no error in the trial court's denial of funds to hire a neurologist.
We have also thoroughly reviewed the record before us for error concerning the various other issues that Dobyne has raised, as well as for plain error not raised. We conclude that the Court of Criminal Appeals correctly ruled on the issues raised before that court. Furthermore, we have found no plain error. Therefore, the judgment of the Court of Criminal Appeals, affirming Dobyne's conviction and death sentence, is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, HOUSTON, KENNEDY, COOK, and BUTTS, JJ., concur.
[1] The information regarding the 16-plus age segment was the only information available from the census figures regarding physically disabled persons. We note that a prospective juror must be over the age of 19 years to serve on a jury. Ala. Code 1975, § 12-16-60.