[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 765 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 766 
Willie Dobyne petitioned for certiorari review of the Court of Criminal Appeals' judgment affirming the trial court's ruling on his Rule 32, Ala.R.Crim.P., petition for postconviction relief. We granted his petition, for the purpose of addressing three of his arguments relating to the Court of Criminal Appeals' holdings in regard to Dobyne's claims of juror misconduct and ineffective assistance of counsel. See Dobyne v.State, 805 So.2d 733 (Ala.Crim.App. 2000). Before proceeding to the merits of those claims, however, we address the appropriate standard of review.
We recognize that Rule 39(a)(2), Ala.R.App.P., governs petitions for certiorari filed in death-penalty cases and that Dobyne has been sentenced to death and has had his sentence affirmed by the Court of Criminal Appeals on appeal and by this Court on certiorari review. SeeDobyne v. State, 672 So.2d 1353 (Ala.Crim.App. 1994), and Ex parteDobyne, 672 So.2d 1354 (Ala. 1991), cert. denied, 517 U.S. 1169 (1996). The plain-error standard of review does not apply in this case. Rule 39(a)(2) reads:
 "(2) Death-Penalty Cases. When the Court of Criminal Appeals has affirmed a sentence imposing the death penalty, counsel who represented the appellant on appeal to the Court of Criminal Appeals or successor counsel shall prepare and file in the Supreme Court a petition for a writ of certiorari for review of the decision of the Court of Criminal Appeals. That petition shall be governed by this rule, except that:
 "(A) In addition to the bases for consideration of the petitions for the writ of certiorari listed in subsection (a)(1) of this rule, a petition for a writ of certiorari will also be considered from a decision failing to recognize as prejudicial any plain error or defect in the proceeding under review whether or not the error or defect was brought to the attention of the trial court or the Court of Criminal Appeals.
 "(B) In addition to the requirements of subsection (d)(3) of this rule, dealing with the form of the petition, when review is sought for failing to recognize as prejudicial any plain error or defect, the petition shall contain a concise statement of the grounds, including a description of the issue and circumstances warranting plain-error review."
(Emphasis added.)
Dobyne's petition for certiorari review in this case does not arise from a direct appeal of a judgment imposing the death penalty; this petition seeks review of a judgment entered on appeal from the denial of Dobyne's petition for postconviction relief. The correct reading of Rule 39(a)(2), Ala.R.App.P., permits plain-error review only with respect to the certiorari petition that arises from the direct appeal of the death-penalty sentence to the Court of Criminal Appeals. Although this Court has not previously stated this construction of the plain-error rule, the Court of Criminal Appeals has consistently applied it:
 "In every appeal from the denial of postconviction relief under Rule 32 in a death-penalty case, this court has held that the plain-error rule does not apply in Rule 32 proceedings and that the procedural bars of Rule 32 apply with *Page 767 
equal force to all cases, including those in which the death penalty has been imposed. Thompson v. State, 615 So.2d 129 (Ala.Cr.App. 1992); Cade v. State, 629 So.2d 38, 41 (Ala.Cr.App. 1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1579, 128 L.Ed.2d 221
(1994); Neelley v. State, 642 So.2d 494, 496
(Ala.Cr.App. 1993), cert. quashed, 642 So.2d 510
(Ala. 1994), cert. denied, 514 U.S. 1005, 115 S.Ct. 1316, 131 L.Ed.2d 197 (1995); State v. Tarver, 629 So.2d 14, 19 (Ala.Cr.App. 1993); Davis v. State, 720 So.2d 1006, 1013 (Ala.Cr.App. 1998); Brownlee v. State, 666 So.2d 91, 93 (Ala.Cr.App. 1995); Horsley v. State, 675 So.2d 908 (Ala.Cr.App. 1996); Grayson v. State, 675 So.2d 516 (Ala.Cr.App. 1995), cert. denied, 519 U.S. 934, 117 S.Ct. 309, 136 L.Ed.2d 225
(1996); Payne v. State, 791 So.2d 383 (Ala.Cr.App. 1999); Boyd v. State, 746 So.2d 364 (Ala.Cr.App. 1999); Lawhorn v. State, 756 So.2d 971 (Ala.Cr.App. 1999); Jones v. State, 753 So.2d 1174 (Ala.Cr.App. 1999)."
Siebert v. State, 778 So.2d 842, 847 (Ala.Crim.App. 1999). Thus, we review Dobyne's allegations of conflict under the standards set out in Rule 39(c), Ala.R.App.P.
 I. Juror Misconduct Claim A. Rule 32.1(e), Ala.R.Crim.P.
Dobyne's specific argument with respect to juror misconduct is that the opinion of the Court of Criminal Appeals conflicts with Ex parte Pierce
[Ms. 1981270, Sept. 1, 2000] ___ So.2d ___ (Ala. 2000). In his appeal to the Court of Criminal Appeals, Dobyne argued that the trial court denied him an appropriate hearing on his postconviction claims that the jury foreperson had failed to disclose the full nature and extent of her relationship with him, and that her presence on the jury had deprived him of a fair trial.
The Court of Criminal Appeals addressed Dobyne's argument in part by stating:
 "Dobyne contends that the circuit court erred in denying his claim that his rights to an impartial jury, due process, a fair trial, and a reliable determination of punishment were violated because, he says, the jury foreperson engaged in misconduct. Specifically he argues that the jury foreperson did not disclose during voir dire that she knew him personally. (Claim Y. in Dobyne's first amended petition at C.R. 360-61.)
 "`Before a claim of juror misconduct may be addressed on the merits in a postconviction petition the petitioner must meet the requirements for newly discovered evidence contained in Rule 32.1(e), Ala.R.Crim.P.' Brown v. State, 807 So.2d 1
(Ala.Cr.App. 1999)."
Dobyne v. State, 805 So.2d at 758. (Emphasis added.) Although the Court of Criminal Appeals then went on to address Dobyne's claim on the merits, the language quoted above is at some variance with our holding inEx parte Pierce, supra. However, we note that the Court of Criminal Appeals referred to our original opinion in Pierce, released May 26, 2000, to further address Dobyne's claim on the merits — but this Court, on September 1, 2000, on application for rehearing, withdrew its May 26, 2000, opinion and issued a new opinion.
In the September 1, 2000, Pierce opinion, this Court considered a similar claim of juror misconduct. We stated:
 "The decisive issue in this case is whether Pierce's claim is procedurally barred under Rule 32.2(a)(3) and (5), Ala.R.Crim.P.
 "Pierce's claim states a proper ground for relief under Rule 32.1(a) because it *Page 768 
states a constitutional violation that would require a new trial. To be entitled to that relief, however, Pierce must avoid the preclusive effect of Rule 32.2(a)(3) and (5); those provisions bar a defendant from presenting in a Rule 32 postconviction petition a claim that could have been raised at trial or on direct appeal."
___ So.2d at ___. This Court then quoted the applicable rules, including Rules 32.1 and 32.2, Ala.R.Crim.P. After reviewing the language of the Rules, we further stated:
 "The Court of Criminal Appeals stated that Pierce had failed to prove that his evidence regarding the sheriff's improper contact with the jury constituted newly discovered evidence; therefore, it held, the trial court correctly held this claim to be procedurally barred on the basis that it could have been raised at trial or on direct appeal. The Court of Criminal Appeals held that Pierce did not satisfy the following three of the five elements required by Rule 32.1(e), Ala.R.Crim.P.: 1) that the information was not known and could not have been discovered at the time of trial or sentencing or in time to raise it in a posttrial motion; 2) that if the information `had been known at the time of trial or of sentencing, the result probably would have been different'; and 3) that `[t]he facts establish that the [defendant] is innocent of the crime' or that he `should not have received the sentence [he] received.'
 "However, Pierce was not required to prove that this information meets the elements of `newly discovered material facts' under Rule 32.1(e). While the information about Sheriff Whittle's contacts with the jury may be `newly discovered,' Pierce does not seek relief under Rule 32.1(e). Pierce does not contend that `[n]ewly discovered material facts exist which require that the conviction or sentence be vacated by the court.' Rule 32.1(e). Instead, Pierce's claim fits under Rule 32.1(a): `The constitution of the United States or of the State of Alabama requires a new trial. . . .' Rule 32.1(a) states a ground for relief distinct from that stated in Rule 32.1(e). If every defendant had to prove that the facts on which he relies for postconviction relief satisfy the elements of `newly discovered material facts' set out by Rule 32.1(e), then constitutional violations could rarely be raised in a Rule 32 petition, and Rule 32.1(a) would be superfluous for all cases except those in which the defendant could prove innocence. There is a place for this Court to review constitutional violations that could not be discovered by the date of trial or in time to be raised in a direct appeal, even if the defendant is guilty of the crime charged. Furthermore, the application of the requirements of Rule 32.1(e) in cases like Pierce's would impose a nearly impossible standard on a defendant filing a Rule 32 petition. A defendant could rarely, if ever, establish, through the same facts tending to prove that the jury was prejudiced or improperly influenced, that he is innocent of the crime charged. Yet, jury prejudice or improper influence is an important issue for this Court to review."
___ So.2d at ___.
We write to illustrate how the facts of Pierce are distinguishable from the facts presented here. In Pierce, the petitioner alleged that the sheriff, who was called as a key witness in his case, had substantial contacts with the jury during the trial. The trial court dismissed the claim as procedurally barred; the Court of Criminal Appeals affirmed, holding that the issue was procedurally barred by Rule 32.2(a)(3) and (5), i.e., that it could have been, but was not, raised at trial or on appeal, and, additionally, *Page 769 
that it did not meet the requirements of a "newly discovered material fact" as imposed by Rule 32.1(e). This Court held that a juror-misconduct claim need not meet the requirements of Rule 32.1(e) to be considered by the trial court and pointed out that a juror-misconduct claim implicates constitutional violations under Rule 32.1(a); this Court also noted that such a claim remains subject to the preclusive bars found in Rule 32.2. This Court thereafter remanded the case for the Court of Criminal Appeals to remand it to the trial court because the record was not clear as to whether the trial court had heard Pierce's juror-misconduct claim on its merits.
The facts presented by Dobyne's petition are clearly different. The trial court did address Dobyne's claim of juror misconduct on its merits. In its order denying that claim, the trial court stated:
 "This Court initially found that the claim that the jury foreperson engaged in misconduct was barred. See
Order, 2-5-98. The basis for Dobyne's claim was that [M.A.M.], the jury foreperson, knew Dobyne through her work as a special education coordinator for Bibb County. Dobyne alleges that [M.A.M.] committed misconduct by failing to answer during voir dire that she knew Dobyne from her prior dealings with him.
 "There is case authority from the Alabama Court of Criminal Appeals that holds claims such as the one presented here are not procedurally defaulted if the allegation concerns newly discovered evidence. In State v. Freeman, 605 So.2d 1258 (Ala.Crim.App. 1992), the Court reversed a capital murder conviction and death sentence because of the jury foreman's failure to reveal during voir dire that he was a former police officer. The Court stated that Freeman's Rule 32 counsel only discovered the information regarding the jury foreperson one week before the Rule 32 evidentiary hearing. Freeman, 605 So.2d at 1259. The Court found significant that `[d]efense counsel stated during the [Rule 32 evidentiary] hearing that if the juror had answered on voir dire that he had been a police officer he would have dismissed him from the panel of prospective jurors.' Id. at 1260.
 "The facts regarding this claim are clearly distinguishable from the facts presented in State v. Freeman. Unlike Freeman, in this case the parties knew [M.A.M.'s] occupation and made a conscious decision to leave her on the jury. [Owings's] deposition at 43-46. Furthermore, the investigator used by trial counsel testified during his deposition that he discovered a copy of Dobyne's school records before trial and gave them to Bill Owings. Hartley's deposition at 20. Dobyne's school records contain documents indicating that more than ten years before trial, [M.A.M.] administered an IQ test to Dobyne and signed off on documents concerning Dobyne. Trial counsel knew that [M.A.M.] was a special education teacher/administrator. Owings's deposition at 45-46. Because of that, he felt that she would be a juror more receptive to the evidence presented by the defense. Trial counsel also knew that Dobyne had been in special education classes, as he called one of Dobyne's teachers as a witness. Given the size of Bibb County, Owings had the necessary knowledge to deduce that [M.A.M.] may have had some contact with Dobyne at some point in his education. With all of this knowledge, trial counsel made a strategic decision to leave [M.A.M.] on the jury. Because of the factual distinctions with Freeman, this Court finds this claim is procedurally defaulted from review because Dobyne *Page 770 
has made no showing of newly discovered evidence.
 "Alternative to the holding of procedural default, this Court finds this claim to have no merit. This Court ordered the parties to present testimony during these Rule 32 proceedings by deposition. After most of the depositions were taken, the State filed a motion `to allow [M.A.M.] to testify at the Rule 32 evidentiary hearing on March 2, 1998.' See `Motion to Allow Live Testimony of [M.A.M.].' As grounds for the motion, the State recited the following:
 "`2. During the depositions of [J.P.], [J.D.], [S.L], and [E.E.], counsel for Dobyne introduced some documents signed by [M.A.M.].
 "`3. Additionally, counsel for Dobyne [has] mailed documents to the State for the purpose of stipulating to the documents' authenticity. Among these documents are some of Dobyne's school records, some of which bear the signature of [M.A.M.].
 "`4. The State proffers that M.A.M. will testify that, although she signed documents pertaining to Willie Dobyne, at the time of the trial, she had no recollection of him. [M.A.M.] therefore could not have relied on extraneous information in arriving at her verdict in this case, as Dobyne contends in his Rule 32 amended petition.'
 "See `Motion to Allow Live Testimony of [M.A.M.],' filed February 20, 1998.
 "This Court allowed the State to call [M.A.M.] as a witness at the evidentiary hearing. The State showed [M.A.M.] every document she had signed regarding Willie Dobyne. Upon her review of the documents, [M.A.M.] stated that they show the only personal contact she had with Dobyne was her administration of an IQ test on May 3, 1978, 14 years before she served on Dobyne's jury. [M.A.M.] stated that her signature on the other documents concerning Dobyne was based on information she received from other school personnel and not from any personal contact with Dobyne. Based on her testimony, the Court finds that [M.A.M.] did not withhold information during voir dire, but that, because of her minimal (almost nonexistent) contact with Dobyne, she had no personal knowledge regarding Dobyne. Therefore, [M.A.M.] could not have relied on extraneous information in arriving at her verdict, as Dobyne alleges in his Rule 32 amended petition. Even if this claim was not procedurally defaulted, the Court would find that Dobyne's claims are lacking of merit."
C.R. at 2831-35. (Emphasis added.) Moreover, despite the statement by the Court of Criminal Appeals that a juror-misconduct claim can be addressed only if it meets the requirements of a newly discovered material fact, imposed by Rule 32.1(e), Ala.R.Crim.P., that court also addressed Dobyne's claim on its merits.
The action taken by the trial court on Dobyne's Rule 32 petition distinguishes this case from the action taken on the petition filed inPierce. In this case, the trial court has already provided the relief that Dobyne would have received under Pierce. In this case, both the trial court and the Court of Criminal Appeals directly addressed Dobyne's juror-misconduct claim. The Court of Criminal Appeals applied the factors set out in Tomlin v. State, 695 So.2d 157 (Ala.Crim.App. 1996), before concluding that the juror-misconduct claim was to be denied. Thus, the situation presented in Pierce is not the situation presented in this case, and our holding in Pierce does not affect our determination that Dobyne's claim of juror misconduct was correctly addressed. *Page 771 
 B. The Standard of Review Applicable to Juror-Misconduct Claims
In addressing the Court of Criminal Appeals' ruling on Dobyne's juror-misconduct claim on the merits, we must note that that court employed the wrong standard when it stated:
 "To determine whether a defendant was prejudiced by a juror's failure to respond truthfully to a question during voir dire examination, the test is whether the defendant actually was prejudiced. Knight v. State, 710 So.2d 511
(Ala.Cr.App. 1997). See Dawson v. State, 710 So.2d 472
(Ala. 1997)."
Dobyne, 805 So.2d at 759.
Although the Court of Criminal Appeals correctly held that, based on the evidence presented at the Rule 32 hearing, Dobyne is not entitled to relief from his conviction or his sentence, the standard the Court of Criminal Appeals applied in reaching its conclusion that this Court, inDawson, had changed the law relating to the standard of proof required to prove a juror-misconduct claim, is not correct. In Dawson, this Court applied the same standard that was advanced in Roan v. State, 225 Ala. 428,143 So. 454 (1932), namely, that in determining whether a new trial or a reversal is warranted because of juror misconduct (in this present case a juror's alleged failure to respond truthfully to a question during voir dire) the test is whether the defendant might have been prejudiced, not whether he actually was prejudiced, by such misconduct. See Roan,225 Ala. at 435, 143 So. at 459. ("The test of vitiating influence is not that it did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced . . . [the] verdict rendered." (Emphasis added.)); and Dawson, 710 So.2d 472, 476 (Ala. 1997) ("Because Dawson failed to show that the juror's viewing of the crime scene resulted in the introduction of facts that might have unlawfullyinfluenced the jury's verdict, a new trial is not warranted." (Emphasis added.)). In fact, in Dawson this Court looked to Reed v. State,547 So.2d 596 (Ala. 1989), in resolving the issue presented. Both Dawson
and Reed applied the "might-have-been-prejudiced" standard, rather than the "actual-prejudice" standard.
The proper standard for determining whether juror misconduct warrants a new trial, as set out by this Court's precedent, is whether the misconduct might have prejudiced, not whether it actually did prejudice, the defendant. See Ex parte Stewart, 659 So.2d 122 (Ala. 1993); Campbellv. Williams, 638 So.2d 804 (Ala. 1994); Union Mortgage Co. v. Barlow,595 So.2d 1335 (Ala. 1992), cert. denied, 506 U.S. 906 (1992). The "might-have-been-prejudiced" standard, of course, casts a "lighter" burden on the defendant than the actual-prejudice standard. See Tomlinv. State, supra, 695 So.2d at 170. For a more recent detailed discussion of the burden of proof required to make a showing under the "might-have-been-prejudiced" standard, see Ex parte Apicella, [Ms. 1992273, March 30, 2001] ___ So.2d ___ at ___ (Ala. 2001) ("It is clear, then, that the question whether the jury's decision might have been affected is answered not by a bare showing of juror misconduct, but rather by an examination of the circumstances particular to the case."(Emphasis original.)).
It is true that the parties in a case are entitled to true and honest answers to their questions on voir dire, so that they may exercise their peremptory strikes wisely. See Fabianke v. Weaver, 527 So.2d 1253 (Ala. 1988). However, not every failure to respond properly to questions propounded during voir dire "automatically entitles [the defendant] to a new *Page 772 
trial or reversal of the cause on appeal." Freeman v. Hall, 286 Ala. 161,166, 238 So.2d 330, 335 (1970); see also Dawson v. State, supra, at 474; and Reed v. State, supra. As stated previously, the proper standard to apply in determining whether a party is entitled to a new trial in this circumstance is "whether the defendant might have been prejudiced by a veniremember's failure to make a proper response." Ex parte Stewart, 659 So.2d at 124. Further, the determination of whether a party might have been prejudiced, i.e., whether there was probable prejudice, is a matter within the trial court's discretion.[1] Eaton v. Horton, 565 So.2d 183
(Ala. 1990); Land Assocs., Inc. v. Simmons, 562 So.2d 140 (Ala. 1989) (Houston, J., concurring specially).
 "The determination of whether the complaining party was prejudiced by a juror's failure to answer voir dire questions is a matter within the discretion of the trial court and will not be reversed unless the court has abused its discretion. Some of the factors that this Court has approved for using to determine whether there was probable prejudice include: `temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror's inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about.'"
Union Mortgage Co. v. Barlow, 595 So.2d at 1342-43 (quoting Freeman v.Hall, supra (other citations omitted)). The trial court, in its order denying Dobyne's Rule 32 petition, extensively addressed these factors in determining that juror M.A.M.'s failure to respond did not present a situation that might have been prejudicial to Dobyne. While Dobyne presented an affidavit of a juror, G.S., that stated that M.A.M. had improperly influenced the jury to consider her knowledge of mental retardation, rather than the evidence presented at trial, we have stated in other contexts that "[we] grant great deference to the trial judge, who is on the scene and who can best judge the credibility of the participants and determine what actually occurred." Ex parte Pressley,770 So.2d 143, 147 (Ala. 2000).
The form of prejudice that would entitle a party to relief for a juror's nondisclosure or falsification in voir dire would be its effect, if any, to cause the party to forgo challenging the juror for cause or exercising a peremptory challenge to strike the juror. Ex parteLedbetter, *Page 773 404 So.2d 731 (Ala. 1981); Warrick v. State, 460 So.2d 320
(Ala.Crim.App. 1984); and Leach v. State, 31 Ala. App. 390, 18 So.2d 289
(1944). If the party establishes that the juror's disclosure of the truth would have caused the party either to (successfully) challenge the juror for cause or to exercise a peremptory challenge to strike the juror, then the party has made a prima facie showing of prejudice. Id. Such prejudice can be established by the obvious tendency of the true facts to bias the juror, as in Ledbetter, supra, or by direct testimony of trial counsel that the true facts would have prompted a challenge against the juror, as in State v. Freeman, 605 So.2d 1258 (Ala.Crim.App. 1992).
Dobyne is not entitled to relief on this juror-misconduct claim because he neither proffered nor introduced evidence that a true answer by M.A.M. would have caused him to challenge M.A.M. for cause or to exercise a peremptory challenge against her. The closest to direct evidence to such effect proffered or introduced in the trial court in support of this Rule 32 claim was this testimony by one of Dobyne's trial lawyers:
 "Q. You testified before about the foreperson of the jury, [M.A.M]. At the time of the trial, what did you know about [M.A.M's] relationship, if any, with Willie Dobyne?
 "A. I was not aware of any relationship that she had with Willie at the time of the trial.
 "Q. Did you know that — at that time, did you know that when she was involved in the schools when Willie was in school, that she had been involved in making a determination that Willie's mental retardation or low intelligence had nothing to do with some misbehavior that he had engaged in?
"A. No, I was not aware of that.
 "Q. If you had known that, is it possible that that would have had any effect on your thinking about her as a desirable juror?
"A. Yes, sure, it's possible."
(R. 1429-30.) An inference on an inference, forbidden by law, MaloneFreight Lines, Inc. v. McCardle, 277 Ala. 100, 167 So.2d 274 (1964), would be necessary to conclude from the answer "Yes, sure, it's possible," that the defense would have challenged M.A.M. (even successfully) for cause or would have exercised a peremptory challenge against her had she revealed the information. The first inference needed by the defendant would be that the "effect on [his lawyer's] thinking about her as a desirable juror" would have been negative rather than positive, for trial counsel's other testimony reveals that they affirmatively thought M.A.M.'s training and experience made her a desirable juror. The second inference, to be impermissibly inferred from the first inference, would be that the negative effect on the lawyer's thinking would have been strong enough to overcome his, and cocounsel's, favorable impression of M.A.M. as a juror and to impel them to challenge her for cause or to exercise a peremptory strike to remove her from the venire. Thus, this testimony fails to establish the requisite prejudice.
In the Rule 32 proceedings, Dobyne also had introduced evidence that, over a span of years more than a decade before the trial, M.A.M., in her capacity as special education coordinator for the Bibb County school system, which included the schools Dobyne then attended, had participated in certain evaluations of his intelligence and behavior. If M.A.M. had recalled and disclosed this information during voir dire, we would note that, even so, the nature of the information, together with the information the defense already knew at that time, *Page 774 
does not, in and of itself, tend to establish that it would have caused the defense to challenge M.A.M. to remove her, or to peremptorily strike her, from the venire.
Dobyne argues that the trial court erroneously deprived him of an opportunity to call witnesses to impeach M.A.M.'s live Rule 32 testimony to the effect that she did not recognize or recall Dobyne during the voir dire. In the Rule 32 proceedings, the trial court allowed the state to present M.A.M.'s testimony live. At the same hearing, Dobyne introduced the affidavits of several witnesses whose testimony does tend to impeach M.A.M. by tending to prove that M.A.M. must have recognized and recalled Dobyne during the voir dire when she failed to respond to the question "Is there anyone who knows the defendant, Willie Dobyne." Such impeachment tends to establish that a truthful answer by M.A.M. at voir dire would have revealed M.A.M.'s previous professional acquaintance and work with Dobyne. Absent any proffer of evidence indicating that such a revelation at voir dire would have caused the defense to challenge M.A.M., or to strike her, as already discussed, however, the trial judge's hearing live testimony from the impeaching affiants would have served no purpose. Therefore, the Court of Criminal Appeals did not err in rejecting the juror-misconduct claim.
 II. Ineffective Assistance of Counsel
Dobyne also argues that he received ineffective assistance of counsel because: (1) his trial lawyers failed to present available evidence in support of his motion for a change of venue; and (2) his trial lawyers failed to investigate the circumstances surrounding his statement to police and failed to present evidence indicating that he was incapable of waiving his right to remain silent and his right to counsel.
In addressing Dobyne's ineffective-assistance claim based on his trial lawyers' failure to present available evidence in support of his motion for a change of venue, the Court of Criminal Appeals stated:
 "Dobyne contends that the circuit court erred in summarily dismissing several of his claims of ineffective assistance of counsel. Many of Dobyne's ineffective-assistance-of-counsel claims alleged that trial counsel was ineffective for not raising claims that were raised and addressed by this Court on appeal. The circuit court concluded that based on this Court's and the Supreme Court's analysis and their rejection of the substantive bases on appeal of several ineffective-assistance-of-trial-counsel claims, Dobyne had not met the prejudice prong of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
 "This Court, in Stringfellow v. State, 485 So.2d 1238, 1243 (Ala.Cr.App. 1986), stated, `[e]ffectiveness of counsel does not lend itself to measurement by picking through the transcript and counting the places where objections might be made.' We agree with the circuit court that Dobyne has failed to establish that the outcome of his trial would have been different with regard to the following claims:
". . . .
 "5. Dobyne's claim that his trial counsel unreasonably failed to present sufficient evidence in support of his motion for a change of venue. (Claim Z.g. in Dobyne's first amended petition at C.R. 362.) See 672 So.2d at 1330 (stating that because the voir dire examination of the potential jurors had established that the pretrial publicity would not affect a determination of Dobyne's guilt, with the exception of one potential juror who was excused for cause, the trial court did *Page 775 
not err in denying Dobyne's motion for a change of venue).
". . . .
 "Although the burden of pleading and proof as to these arguments was on Dobyne, see Rule 32.3, Ala.R.Crim.P., he presented no facts to support his argument that his [trial] counsel's alleged inadequate performance prejudiced him."
805 So.2d at 744-46.
Dobyne's remaining allegation of ineffective assistance in regard to the statement he made to police was addressed by the Court of Criminal Appeals as follows:
 "Dobyne contends that his trial counsel failed to investigate the circumstances surrounding Dobyne's making a highly incriminating statement, including, but not limited to, failing to investigate the circumstances under which Dobyne allegedly waived his right to remain silent and to counsel and failing to present evidence demonstrating that Dobyne was incapable of voluntarily waiving his [right to remain silent and his right to] counsel. (Claim Z.j. and u. in Dobyne's first amended petition at C.R. 363 and 365-66.) Specifically, Dobyne argues that during the hearing on his motion to suppress, trial counsel did not present `any of the powerful evidence of mental retardation, inability to read, and limited cognitive functioning.' (Dobyne's brief to this Court at p. 74.)
 "On direct appeal this Court conducted a plain error review of Dobyne's contention that he did not understand the Miranda rights that he purportedly waived and that, therefore, he could not have waived those rights. We noted that:
 "`The appellant presented evidence of his diminished mental capacity during the sentencing phase of the trial. Dr. Robert Lyman, a psychologist, testified that the appellant had an IQ of 73, which places him in the borderline mentally retarded range, and the mental capability of a 12- or 13-year-old. The psychologist testified that tests revealed that the appellant suffered mild to moderate brain impairment in the areas of fine motor coordination, rhythm perception, speech, writing, reading, memory, and intellectual processes. Dr. Lyman also testified that the appellant exhibited the characteristics of someone afflicted with fetal alcohol syndrome.
 "`Relatives and former teachers of the appellant also testified that the appellant's intelligence and mental skills were below average. There was testimony that he attended special education classes and graduated from high school. Ethel Evans Jones, one of the appellant's high school teachers, testified that the appellant could read "some" but that, in her opinion, he could not have understood all the terms in the rights waiver form that he signed.
 "`Dr. Kathy A. Rogers, a certified forensic examiner at Taylor Hardin Secure Medical Facility, evaluated the appellant to determine his competency to stand trial. Although Dr. Rogers recognized the appellant's limited mental capacity, she did not find any evidence of a major psychiatric disorder. Dr. Rogers found that his intelligence level would not affect his ability to stand trial or his ability to distinguish between right and wrong. In her evaluation report on the appellant, Dr. Rogers stated:
 "`"Mr. Dobyne understood his current charges, as well as the seriousness of these charges. He demonstrated adequate understanding of the range and nature of possible *Page 776 
penalties should he be convicted, and his appraisal of the likely outcome of his case was fairly reasonable. He demonstrated a basic understanding of the roles of various courtroom personnel, including the defense attorney, prosecuting attorney, judge, jury, defendant, and witness. He understood that the role of the judge was `he sentences you, tells you the court date.' He understood that twelve people comprised a jury and that their job is to `tell if you're guilty or not guilty.'"'
 "672 So.2d 1336-37. This Court concluded that `[a]lthough it is undisputed that [Dobyne's] mental capabilities were below average, but "average" is the middle mark, there is no evidence that [Dobyne] could not understand that he had the right to remain silent and that he had the right to an attorney.' 672 So.2d at 1337.
 "The evidence Dobyne offered in support of this claim is cumulative of the evidence this Court evaluated on direct appeal. Dobyne has not presented any additional evidence, i.e., evidence not considered by this Court on direct appeal, that would have affected the determination that Dobyne's statement was voluntary. As this Court stated in Dobyne, `"`While an accused's intelligence and literacy are important factors to be considered in determining whether he intelligently and voluntarily waived his constitutional rights and made a confession, weak intellect or illiteracy alone will not render a confession inadmissible.' Hobbs v. State, 401 So.2d 276, 282 (Ala.Cr.App. 1981)."' 672 So.2d 1337, quoting Whittle v. State, 518 So.2d 793, 796-97 (Ala.Cr.App. 1987).
 "Because Dobyne has failed to offer any evidence that would establish that his statement was involuntary, he has also failed to establish that further investigation by trial counsel would have changed the outcome of the suppression hearing. Strickland, supra. Dobyne has not demonstrated that he is entitled to relief with regard to this claim."
805 So.2d at 751-52.
As we have previously discussed, plain-error review does not apply to appeals from rulings on Rule 32, Ala.R.Crim.P., postconviction petitions. In Ex parte Dobyne, 672 So.2d 1354 (Ala. 1995), this Court conducted a plain-error review during Dobyne's direct appeal, stating, "We have also thoroughly reviewed the record before us for error concerning the various other issues that Dobyne has raised, as well as for plain error not raised." Id. at 1359. Moreover, Rule 32.2(a) specifically states:
 "(a) Preclusion of Grounds. A petitioner will not be given relief under this rule based upon any ground:
". . . .
 "(4) Which was raised or addressed on appeal or in any previous collateral proceeding. . . ."
The Court of Criminal Appeals fully discussed the extent to which it considered these issues on Dobyne's direct appeal. Because they were raised in his direct appeal, Rule 32.2(a)(4) now precludes their consideration as part of Dobyne's appeal from the denial of his postconviction petition.
The judgment of the Court of Criminal Appeals, affirming the trial court's order denying Dobyne's postconviction petition alleging juror misconduct, ineffective assistance of counsel, and other things is due to be affirmed.
AFFIRMED. *Page 777 
Houston, See, Lyons, Brown, Johnstone, Woodall, and Stuart, JJ., concur.
Moore, C.J., concurs in result.
[1] Two separate standards had previously existed for civil and criminal cases in regard to the standard to be applied, the Roan test of "might have been influenced" in criminal cases, and the Freeman test of "probable prejudice" in civil cases. In Ex parte O'Leary, 438 So.2d 1372
(Ala. 1983), a criminal case involving a possession-of-marijuana charge, this Court relied upon the discussion in Burroughs Corp. v. HallAffiliates, Inc., 423 So.2d 1348 (Ala. 1982), a civil case, discussing the "might-have-been-prejudiced" standard as employed in Ex parteLedbetter, 404 So.2d 731 (Ala. 1981), and the "probable-prejudice" standard advanced by Freeman. This Court then stated that "we follow theFreeman standard and opine that the false answers given [on voir dire] resulted in probable prejudice to O'Leary." O'Leary, 438 So.2d at 1375. These two standards are arguably different. However, since O'Leary, the standards have become intertwined. See, e.g., Apicella v. State, [Ms. CR-96-2285, February 25, 2000] ___ So.2d ___ (Ala.Crim.App. 2000); Travisv. State, 776 So.2d 819, 847 (Ala.Crim.App. 1997); Tomlin v. State,695 So.2d 157, 169 (Ala.Crim.App. 1996); Knight v. State, 675 So.2d 487,494 (Ala.Crim.App. 1995); State v. Freeman, 605 So.2d 1258, 1259
(Ala.Crim.App. 1992); State v. Gilbert, 568 So.2d 876, 878
(Ala.Crim.App. 1990); Washington v. State, 539 So.2d 1089, 1095
(Ala.Crim.App. 1988); Clark v. State, 551 So.2d 1081, 1088
(Ala.Crim.App. 1986); and Neelley v. State, 494 So.2d 669, 680
(Ala.Crim.App. 1985).